

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

NORMAN R. SEAY, et al.,                    )
                      **Appellants,**   )
                                 )

**v.**                                     )    **WD77873**
                                 )

**TIM JONES, et al.,**                     )    **FILED: September 15, 2014**
                 **Respondents.**   )

### Appeal from the Circuit Court of Cole County
### The Honorable Jon E. Beetem, Judge

### Before:  Alok Ahuja, C.J., and Victor C. Howard and Gary D. Witt, JJ.

Norman Seay and Nimrod Chapel (collectively "Seay") appeal a judgment entered by the Circuit Court of Cole County.  The judgment rejected Seay's challenge to the official summary statement which is part of the official ballot title for House Joint Resolution No. 90 ("HJR 90"). HJR 90 will appear on the November 4, 2014 general election ballot.  HJR 90 asks voters to approve an amendment to the Missouri Constitution to authorize voting in advance of election day in general elections, if funds are appropriated and disbursed by the State to local election authorities to pay the costs of this early voting.  The circuit court found that the summary statement Seay challenges was sufficient and fair.

Because we conclude that the summary statement fails to advise voters that early voting will occur only if funds are appropriated and disbursed by the State, we reverse, and certify to the Secretary of State an amended summary statement which more accurately describes the effect of the proposed constitutional amendment.

**Factual Background**

The General Assembly truly agreed to and finally passed House Joint Resolution No. 90 during its 2014 regular session.[1]  The full text of HJR 90 appears in an Appendix to this opinion.

HJR 90 is a statewide ballot measure which, if passed, would amend Article VIII of the Missouri Constitution by adding a new § 11.  Section 11.1 states that "[q]ualified voters of the state shall be entitled to vote in person or by mail in advance of the day of the general election, but only under the following subdivisions."  HJR 90 provides that advance ballots may be cast in person or by mail "only during the six business days . . . immediately prior to and including the last Wednesday prior to the election day," and only "at the local election authority during its regular business hours."  § 11.1(3).  To be eligible for early voting, voters must be registered to vote four weeks before election day.  § 11.1(1).  Voters need not offer any explanation for their desire to cast an early ballot.  § 11.1(2).  Voters may request mail-in ballots only by a written, signed and dated request, which will be valid for only one general election.  § 11.4.  HJR 90 also specifies that election authorities must appoint election judges to oversee the advance voting, and may not disclose prior to the election day the identity of a qualified voter who has cast an advance ballot, without the voter's written authorization.  §§ 11.1(4), 11.2, 11.3.

Section 11.5 of HJR 90 makes the availability of advance voting in any particular election contingent on the State's appropriation and disbursement of funds to cover the costs of such voting.  It provides:

> No local election authority or other public office shall conduct any activity or incur any expense for the purpose of allowing voting in person or by mail in advance of the general election day unless a state appropriation is made and

---

[1]  Formally, HJR 90 is the "Senate Substitute for Senate Committee Substitute for House Committee Substitute for House Joint Resolution No. 90, 97th General Assembly, 2d Regular Session," or "SS SCS HCS HJR 90" for short.  For ease of reference, we refer to the legislation as "HJR 90."

2

disbursed to pay the local election authority or other public office for the increased cost or expense of the activity.

The preamble to HJR 90 specifies that the proposed constitutional amendment will be submitted to voters at the November 4, 2014 general election, or at a special election called by the Governor for that purpose. Because no special election was called, HJR 90 will appear on the November 2014 general election ballot.

As authorized by § 116.155.2,[2] the General Assembly drafted an official summary statement to appear on the ballot as part of the official ballot title for the proposal. The summary statement drafted by the General Assembly states:

> Shall the Missouri Constitution be amended to permit voting in person or by mail for a period of six business days prior to and including the Wednesday before the election day in all general elections?

The State Auditor prepared a fiscal note and fiscal note summary for HJR 90. The fiscal note summary, which together with the summary statement will constitute the official ballot title, states:

> State governmental entities estimated startup costs of about $2 million and costs to reimburse local election authorities of at least $100,000 per election. Local election authorities estimated higher reimbursable costs per election. Those costs will depend on the compensation, staffing, and, [sic] planning decisions of election authorities with the total costs being unknown.

On June 30, 2014, the Secretary of State certified the official ballot title for HJR 90, which consisted of the summary statement prepared by the General Assembly, and the fiscal note summary prepared by the State Auditor, without change.

On July 2, 2014, Seay filed a petition challenging the sufficiency and fairness of the official summary statement for HJR 90. An amended petition was filed on July 16, 2014, adding

---

[2] Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, updated through the 2013 Cumulative Supplement.

Chapel as an additional plaintiff. Pursuant to the requirements of § 116.190.2, Seay named as defendants the President *Pro Tem* of the Senate, Tom Dempsey; the Speaker of the House, Tim Jones; the legislative sponsor of HJR 90,Tony Dugger; and the Secretary of State, Jason Kander. The amended petition specifies that each defendant is sued solely in his official capacity.

The Attorney General's Office entered its appearance on behalf of all defendants. Additionally, separate counsel entered an appearance on behalf of Dempsey, Jones, and Dugger (collectively "the Legislators").

On August 8, 2014, Seay filed a motion for summary judgment, as well as a motion to strike the pleadings filed by the Legislators' separate counsel. On the same day, the Attorney General's Office and the Legislators' counsel filed motions for judgment on the pleadings. The circuit court heard arguments of counsel on August 19, 2014. On August 25, 2014, the circuit court entered its judgment granting the defendants' motions for judgment on the pleadings, and finding the summary statement to be fair and sufficient. The court denied as moot both Seay's motion for summary judgment, and his motion to strike the Legislators' separate pleadings.

Seay filed his notice of appeal in the circuit court on August 25, 2014, the same day that judgment was entered. We granted Seay's motion to expedite the appeal on August 27. Following the filing of the record on appeal and the parties' briefs, we heard oral argument in the case on September 12, 2014.[3]

## Discussion

Seay's briefing challenges both the circuit court's grant of the defendants' motions for judgment on the pleadings, and the court's denial of his motion for summary judgment.

---

[3] We express our appreciation to all counsel for the quality of their briefing and argument, particularly in light of the compressed schedule in which this appeal was presented.

4

> An order denying a motion for summary judgment is not a final judgment and, therefore, is not reviewable on appeal unless the merits of the denied motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party; under those circumstances, the denial of a motion for summary judgment may be reviewed on appeal.

*Fed. Nat'l Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 666 n.9 (Mo. App. W.D. 2014) (citing *Reeves v. Allstate Ins. Co.*, 327 S.W.3d 592, 598 (Mo. App. S.D.2010)); *see also*, *e.g.*, *Farmers Ins. Co. v. Wilson*, 424 S.W.3d 487, 491 n.4 (Mo. App. S.D. 2014) (citing and quoting *Grissom v. First Nat'l Ins. Agency*, 371 S.W.3d 869, 879 (Mo. App. S.D. 2012)).

In this case, Seay's motion for summary judgment was the converse of the defendants' motions for judgment on the pleadings: while the defendants' motions argued that the summary statement was sufficient and fair based on the facts alleged in Seay's amended petition, his summary judgment motion alleged that the summary statement was insufficient because of its failure to mention certain central features of HJR 90. Each side's motions could virtually be read as briefs in opposition to the motion or motions filed by the other side. In these circumstances, the denial of Seay's motion for summary judgment is inextricably intertwined with the grant of the defendants' motions for judgment on the pleadings, and it is therefore reviewable here.

A court's grant of judgment on the pleadings is reviewed *de novo*. *Coburn v. Mayer*, 368 S.W.3d 320, 323 (Mo. App. W.D. 2012).

> In reviewing the grant of a motion for judgment on the pleadings, this Court must decide whether the moving party is entitled to judgment as a matter of law on the face of the pleadings. The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion. A grant of judgment on the pleadings will be affirmed only if the facts pleaded by the petitioner, together with the benefit of all reasonable inferences drawn therefrom, show that petitioner could not prevail under any legal theory.

*Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 12 (Mo. banc 2012) (citations and internal quotation marks omitted).

Similarly, a trial court's ruling on a motion for summary judgment is reviewed *de novo*.

*Brehm v. Bacon Twp.*, 426 S.W.3d 1, 3 (Mo. banc 2014).

> In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law.

*Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011) (citing *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)).

Here, there are a limited number of facts which are material to the disposition of this appeal: the content of HJR 90; the wording of the summary statement and fiscal note summary contained in the official ballot title certified by the Secretary of State; and the dates on which various official actions or litigation events occurred. Those facts are undisputed; the contested issues are all matters of law for our independent review. *Brown v. Carnahan*, 370 S.W.3d 637, 653 (Mo. banc 2012) ("*De novo* review of the trial court's legal conclusions about the propriety of the secretary of state's summary statement . . . is the appropriate standard of review when there is no underlying factual dispute that would require deference to the trial court's factual findings.").

## I.

Seay argues that the summary statement is insufficient or unfair, because it fails to state (1) that advance voting will occur only if the State appropriates and disburses funds to cover the costs of such voting; and (2) that early voting will occur only during local election authorities' regular business hours, rather than during the longer hours for which the polls are normally open on election day.

6

**A.**

Generally, the Secretary of State is responsible for drafting the official summary statement for constitutional amendments proposed by the legislature.  § 116.160.1.  The General Assembly may, however, choose to draft its own summary statement.  § 116.155.1.

> The official summary statement approved by the general assembly shall, taken together with the approved fiscal note summary, be the official ballot title and such summary statement shall contain no more than fifty words, excluding articles.  The title shall be a true and impartial statement of the purpose of the proposed measure in language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure.

§ 116.155.2.  Under § 116.190.1, Missouri citizens are authorized to seek judicial review of the official ballot title, including an official ballot title prepared by the General Assembly.  In such an action, the challenger must "state the reason or reasons why the summary statement portion of the official ballot title is insufficient or unfair."  § 116.190.3.

The standards we must apply in resolving Seay's challenge to the language of the summary statement are well-developed in existing caselaw.  "When a party challenges the language of the summary statement, '[t]he burden is on the opponents of the language to show that the language was insufficient and unfair.'" *Overfelt v. McCaskill*, 81 S.W.3d 732, 738 (Mo. App. W.D. 2002) (superseded by statute on other grounds) (quoting *Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo. App. W.D. 1994)).[4]

> Insufficient means "inadequate; especially lacking adequate power, capacity, or competence."  The word "unfair" means to be "marked by injustice, partiality, or deception."  Thus, the words insufficient and unfair . . . mean to inadequately and with bias, prejudice, deception and/or favoritism state the [consequences of the proposed amendment].

---

[4]     While *Overfelt* and *Cures without Cloning* state that a challenger must establish that a summary statement is "insufficient *and* unfair," under § 116.190.3, "the proper consideration is whether the ballot title is 'insufficient *or* unfair.'"  *Mo. Mun. League v. Carnahan*, 364 S.W.3d 548, 552 n.6 (Mo. App. W.D. 2011) (emphasis altered; quoting § 116.190.3).

*Cures without Cloning v. Pund*, 259 S.W.3d 76, 81 (Mo. App. W.D. 2008) (quoting *Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo. App. W.D. 1994) (internal citations omitted)).

> The language used should fairly and impartially summarize the purpose of the measure so that voters will not be deceived or misled. The summary statement should accurately reflect the legal and probable effects of the proposed initiative.

*Archey v. Carnahan*, 373 S.W.3d 528, 532 (Mo. App. W.D. 2012) (citations and internal quotation marks omitted). To be "sufficient" and "fair," the summary statement must accurately "describe[ ] the primary objective[s] of the proposed [amendment]." *Id.* at 533. "It is incumbent upon the legislature to prepare a summary statement that endeavors to promote an informed understanding of the probable effect of a proposed amendment." *Coburn v. Mayer*, 368 S.W.3d 320, 324 (Mo. App. W.D. 2012).

> The question, of course, is not whether this is the best summary, but whether the summary gives the voter a sufficient idea of what the proposed amendment would accomplish, without language that is intentionally unfair or misleading. The idea is to advise the citizen what the proposal is about.

*Billington v. Carnahan*, 380 S.W.3d 586, 595 (Mo. App. W.D. 2012).

As a reviewing court, we "'do not sit in judgment on the wisdom or folly of proposals.'" *Cures without Cloning*, 259 S.W.3d at 81 (quoting *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990)). Instead, "we consider only those threshold issues affecting the integrity of the election itself." *Id.* (citing *State ex rel. Trotter v. Cirtin*, 941 S.W.2d 498, 500 (Mo. banc 1997)). Moreover, we are mindful that "whether the summary statement prepared by the [General Assembly] is the best language for describing the [proposed amendment] is not the test." *Bergman v. Mills*, 988 S.W.2d 84, 92 (Mo. App. W.D. 1999). "If charged with the task of preparing the summary statement for a ballot initiative, ten different writers would produce ten different versions." *Asher v. Carnahan*, 268 S.W.3d 427, 431 (Mo. App. W.D. 2008). There is no uniquely correct language for a summary statement to which the

8

drafter must adhere; to the contrary, "there are many appropriate and adequate ways of writing the summary ballot language." *Id.* at 432.

**B.**

Seay argues, first, that the summary statement is insufficient or unfair because it fails to notify voters that, if the proposed amendment passes, advance voting will be available only in those elections for which the State has appropriated and disbursed funds to pay the increased costs of the advance voting. Seay argues that the summary statement will mislead voters into believing that early voting *will* be allowed "in all general elections," even though such voting is subject to a significant contingency. We agree.

The summary statement for HJR 90 adopted by the General Assembly poses the following question:

> Shall the Missouri Constitution be amended to permit voting in person or by mail for a period of six business days prior to and including the Wednesday before the election day in all general elections?

Reduced to its essence, the summary statement tells Missouri voters that, under the proposal, "the Missouri Constitution [will] be amended to permit voting . . . before the election day in all general elections."

Clearly, a voter reading the summary statement would expect that, if the proposal passes, advance voting *will* be an available option for voters "in all general elections." In the sense used in the summary statement, the verb "permit" means "to consent to expressly or formally **:** grant leave for or the privilege of **:** ALLOW, TOLERATE," and "to give (a person) leave **:** AUTHORIZE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1683 (1993). Given this definition, a voter would reasonably understand the existing summary to mean that, if the amendment is approved, voters will be allowed and authorized to vote in advance of election day in all general elections, and will be given the privilege of doing so.

9

Although the summary statement suggests that passage of the amendment would authorize advance voting "in all general elections," § 11.5 of HJR 90 provides that "[n]o local election authority or other public office shall conduct any activity or incur any expense" to facilitate early voting "unless a state appropriation is made and disbursed to pay the local election authority or other public office for the increased cost or expense of the activity." Thus, any right to early voting granted to voters by HJR 90 is made subject to the General Assembly's and Governor's authority over appropriations, and to the authority of the Governor to withhold appropriated funds from disbursement.

The funding contingency set forth in § 11.5 of HJR 90 is a significant qualification on citizens' right to advance voting. As a general proposition, the General Assembly's appropriations power gives it wide discretion to "allocat[e] resources among the various functions of state government" "in accordance with its sense of values and priorities." *Weinstock v. Holden*, 995 S.W.2d 411, 418-19 (Mo. banc 1999); *see also, e.g.*, *State ex rel. Kansas City Symphony v. State*, 311 S.W.3d 272, 278 (Mo. App. W.D. 2010) ("The policy underlying the constitutional appropriations requirement is that each legislature must have discretion to respond to the financial needs of the times."). Moreover, even after the legislature passes an appropriations bill, Article IV, § 26 of the Missouri Constitution gives the Governor the power to veto "items or portions of items of appropriation of money in any bill presented to him," the so-called "line-item veto." HJR 90 does not obligate the General Assembly to appropriate funds for advance voting, or prevent the Governor from nullifying any legislative appropriation by line-item veto; their discretion over appropriations is unconstrained. Besides being contingent on the exercise of these discretionary appropriations authorities, the advance voting contemplated by HJR 90 would also be subject to the Governor's authority under Article IV, § 27 of the Missouri

10

Constitution to "reduce the expenditures of the state or any of its agencies below their appropriations whenever the actual revenues are less than the revenue estimates upon which the appropriations were based." *See generally, Schweich v. Nixon*, 408 S.W.3d 769 (Mo. banc 2013); *State ex rel. Sikeston R-VI Sch. Dist. v. Ashcroft*, 828 S.W.2d 372, 375-76 (Mo. banc 1992).

Thus, even after the passage of HJR 90, whether advance voting will occur will be subject to the General Assembly's virtually unbounded discretion over appropriations, to the Governor's line-item veto, and to the Governor's constitutional authority to withhold appropriated funds when fiscal circumstances require. Yet these significant contingencies are not referenced in any fashion in the summary statement.

The existence of these contingencies significantly alters the nature of the right granted to voters in HJR 90. In an analogous situation, Missouri courts have recognized that a purported contract in which one party retains the unilateral ability to deny the other party any contractual benefits is illusory, and unenforceable. If a contracting party can wholly avoid his contractual obligations without consequence, "[i]n reality, he promised nothing; therefore his promise was an 'illusory promise.'" *Fenberg v. Goggin*, 800 S.W.2d 132, 136 (Mo. App. E.D. 1990); *see also Baker v. Bristol Care, Inc.*, No. SC93451, 2014 WL 4086378, at *5 (Mo. banc Aug. 19, 2014) ("A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations."); *Midland Prop. Partners, LLC v. Watkins*, 416 S.W.3d 805, 814 n.6 (Mo. App. W.D. 2013) ("'The phrase "illusory promise" means words in promissory form that promise nothing.'" (citation omitted)). While the right to advance voting granted by HJR 90 may not be "illusory," it is significantly colored by the fact that legislative or executive action (or inaction) could wholly extinguish it. The fact is, there is no guarantee that if HJR 90 passes,

11

advance voting will *ever* occur in any general election; indeed, absent the State's appropriation and disbursement of funds, HJR 90 *prohibits* advance voting. This is a central feature of HJR 90, and a fact of which voters are entitled to be informed.[5]

The fact that the summary statement fails to refer to the funding contingency may be significant from another perspective as well. Immediately following the summary statement, the fiscal note summary (which Seay does not challenge) forecasts that the State will incur direct start-up costs of more than $2 million to implement advance voting, and that the "costs to reimburse local election authorities" are "unknown," but may be substantial. It is significant for voters to be aware, particularly given the State's fiscal circumstances over the past several years, that if HJR 90 passes the State will not be *required* to incur the costs described in the fiscal note summary; instead, the legislature and executive will have the ability to decline to fund advance voting in particular general elections, based on their assessment of the State's finances. It may also be significant to voters to know that HJR 90 will not impose an "unfunded mandate" on local election authorities to conduct advance voting; if the State does not disburse funds necessary to defray the increased costs, local election authorities will be under no obligation to take any action with respect to early voting (and will, indeed, be prohibited from doing so).

The Legislators[6] emphasize that the summary statement alerts voters that the effect of the proposed constitutional amendment is merely to "permit" advance voting, but not to *require* it.

---

[5] It may be that existing provisions of the Missouri Constitution would require the State to pay for the increased costs incurred by local election authorities before advance voting could occur, even if § 11.5 were not included in HJR 90. We need not decide that question. Even if existing law would already prevent advance voting from being implemented unless the State paid for it, "at least in some instances context demands a reference to what is currently present to understand the effect of the proposed change." *Mo. Mun. League v. Carnahan*, 364 S.W.3d 548, 553 (Mo. App. W.D. 2011); *accord*, *Brown*, 370 S.W.3d at 660; *Coburn v. Mayer*, 368 S.W.3d 320, 324 (Mo. App. W.D. 2012).

We also take no position as to whether the General Assembly has the authority under the existing Missouri Constitution to enact laws making early voting generally available.

The Legislators suggest that the use of the word "permit" informs voters that the availability of advance voting is not assured, and may depend on legislative or executive action. This argument misconstrues the summary statement, however. The group that is "permitted" to engage in advance voting under the summary statement is the Missouri electorate; it is *voters* who would be "permitted" to vote, in person or by mail, prior to election day. It is hardly surprising that the summary statement does not state that voters would be "required" to engage in advance voting; instead, they will be "permitted" (or authorized, allowed, or given leave) to engage in advance voting, at their option. The summary statement does not indicate that the legislature or the Governor will be "permitted" to do anything. In particular, the summary in no way suggests that HJR 90 "permits" the General Assembly or the Governor, through the exercise of their appropriations and disbursement powers, to decide whether or not advance voting occurs *at all*. The summary statement's use of the word "permit" does nothing to inform voters of the funding contingency.

The Legislators also emphasize that HJR 90 contains a number of provisions detailing the manner in which advance voting will be implemented, including provisions specifying voter registration requirements; requiring the engagement of necessary election judges; and addressing how election authorities must respond to requests seeking information prior to election day concerning which voters have engaged in advance voting. The Legislators suggest that the funding contingency is merely one among many detailed implementation provisions contained in HJR 90, and that it would have been impossible for the General Assembly to describe all of them in the space of a 50-word summary. We are unpersuaded. The other provisions of HJR 90 to

---

[6] Because the Secretary of State construes his duties with respect to a summary statement drafted by the General Assembly to be purely ministerial, he has taken no position as to the sufficiency or fairness of the summary statement.

which the Legislators refer are *either* conditions which voters could satisfy through reasonable effort (*e.g.*, registering to vote sufficiently in advance of the general election), *or* specify the manner in which local election authorities will implement the new advance-voting program. *None* of the other provisions of HJR 90 would have the effect of wholly eliminating advance voting in particular general elections. The fact that HJR 90 contains other provisions which the summary statement does not describe does not diminish the importance of making *some* reference to the funding contingency.

We have little doubt that the current summary statement would lead voters to believe that, should the amendment pass, early voting will be permitted in all future general elections in Missouri. That is not the effect of the proposed amendment, however. Because it will mislead voters as to the effects of the passage of HJR 90, the current summary statement is insufficient and unfair for failing to make reference to the funding contingency. For these reasons, the circuit court erred in granting the defendants' motions for judgment on the pleadings; to the contrary, Seay established his right to judgment as a matter of law that the summary statement is insufficient and unfair in this respect.

## C.

Seay also argues that the summary statement is insufficient because it fails to refer to the fact that advance voting will only be permitted during a local election authority's *regular business hours*, not during the extended hours during which polling places are normally open.

The summary statement's failure to refer to the fact that advanced voting would only take place during business hours does not render the summary unfair or insufficient.

> Within the confines of the word limit, the ballot title is not required to set out the details of the proposal or resolve every peripheral question related thereto. While there may be aspects of the ballot initiative or consequences resulting therefrom that Appellants would have liked to have seen included in the summary statement, their exclusion does not render the summary statement either insufficient or

14

> unfair. The test is not whether increased specificity and accuracy would be preferable or provide the best summary; rather, the important test is whether the language fairly and impartially summarizes the purpose of the initiative.

*Archey*, 373 S.W.3d at 533-34 (citations and internal quotation marks omitted); *see also*, *e.g.*, *Brown*, 370 S.W.3d at 656; *Coburn*, 368 S.W.3d at 326.

The specific hours within which advance voting will occur is not so significant that its omission from the summary statement renders the summary unfair or insufficient. As discussed in § I.B above, the hours during which advance voting will occur is merely one among several implementation features contained in HJR 90; it would be impossible for a 50-word summary to capture them all. We also note that the summary statement *does* say that advance voting will only be permitted on "business days"; while this does not specifically refer to the hours during which advance voting will be available, the reference to "business days" gives voters some indication that the times at which advance voting will occur may differ from the times that polling places are normally open on election day. While it may have been preferable to include some reference to the hours for advance voting, the summary statement's failure to do so is not fatal.

### D.

Because we have found the existing summary statement to be insufficient and unfair for its failure to reference the funding contingency contained in § 11.5 of HJR 90, we must modify the summary statement to describe this feature.

Seay argues that, because § 116.155.2 states that "[t]he official summary statement approved by the general assembly shall . . . be the official ballot title," we have no authority to alter the summary statement the legislature drafted. Instead, Seay argues that we can only issue an order declaring that the existing summary statement is insufficient and unfair, and that it cannot appear on the November 2014 general election ballot. We disagree. Section 116.190.1

15

specifically provides Missouri citizens the right to seek judicial review of official ballot titles proposing constitutional amendments, including proposed amendments "submitted by the general assembly." Section 116.190.2 specifies that, where a petitioner "challeng[es] the official summary statement . . . prepared pursuant to section 116.155" – *i.e.*, by the General Assembly – the Speaker of the House, the President *Pro Tem* of the Senate, and the legislative sponsor of the proposal shall be named as defendants, in addition to the Secretary of State. Section 116.190.3 then provides that a challenger's petition must "state the reason or reasons why the summary statement portion of the official ballot title is insufficient or unfair and shall request a different summary statement portion of the ballot title." Section 116.190.4 states that, in such an action, "the court shall consider the petition, hear arguments, and in its decision certify the summary statement portion of the official ballot title to the secretary of state." The remedial provisions of § 116.190.4 make no distinction between summary statements prepared by the General Assembly itself, *versus* those prepared by the Secretary of State.

We have repeatedly construed the provisions of § 116.190, and in particular the provisions of § 116.190.4, to authorize the courts to modify the language of a summary statement found to be insufficient or unfair, and to certify the modified language to the Secretary of State. As we explained in *Cures without Cloning*, 259 S.W.3d 76:

> Missouri courts have recognized that "Section 116.190 allows the trial court to correct any insufficient or unfair language of the ballot title and to certify the corrected official ballot title to the secretary of state." These decisions are consistent with Section 116.190.3, which allows a petitioner in circuit court to request a "different summary statement" if the Secretary's ballot title is determined insufficient or unfair. Notably, there is no provision for a remand of the summary statement under these circumstances. Section 116.190.4 gives the court discretion to remand a fiscal note or fiscal note summary to the State Auditor to correct deficiencies, but the statute does not authorize remand of any portion of the ballot title to the Secretary for modification. The statute implicitly allows the court to certify a corrected summary statement, and then "the secretary

16

of state shall certify the language which the court certifies to [her]." Section 116.190.4.

*Id.* at 83 (emphasis and other citations omitted); *see also*, *e.g.*, *Mo. Mun. League v. Carnahan*, 303 S.W.3d 573, 588-89 (Mo. App. W.D. 2010) (entering "a judgment modifying the ballot summary as set forth herein" and remanding modified language to Secretary of State); *Cole v. Carnahan*, 272 S.W.3d 392, 394-95 (Mo. App. W.D. 2008).

Seay offers no persuasive reason why we cannot apply the reasoning of *Cures without Cloning* here, even though that case involved a summary statement drafted by the Secretary of State. Seay is correct that § 160.155.2 specifies that "[t]he official summary statement approved by the general assembly shall . . . be the official ballot title." However, § 160.190 then goes on to make that legislatively-drafted summary statement subject to judicial review, under the same procedures, and subject to the same remedy, applicable to a summary statement drafted by the Secretary of State. Moreover, although Seay argues that § 160.155.2 distinguished summary statements drafted by the General Assembly from summary statements drafted by the Secretary of State, § 160.230 mandates that "the official ballot titles prepared under section 116.160" – *i.e.*, by the Secretary of State – "shall" appear on the ballot. Like § 160.155.2, § 160.230 makes no reference to the possibility that a court may modify the summary statement the Secretary of State has prepared. Yet, it is well-established that the Secretary of State must include on the ballot a summary statement modified by the court pursuant to § 116.190.4.

Accordingly, we have the authority to modify the summary statement enacted as part of HJR 90.[7] In order to fairly summarize the funding contingency contained in § 11.5 of HJR 90,

---

[7] We are aware that, in other cases, parties have argued that judicial modification of a summary statement violates the separation of powers, either in all cases, or specifically in cases in which the summary statement was drafted by the General Assembly. No such argument was made in this appeal, and we do not address it.

17

the official summary statement should be modified as follows. The additional language we require makes clear that the effect of HJR 90 is to *prohibit* advance voting if the funding condition is not met. The modified language, indicating deleted and added text, reads:

> Shall the Missouri Constitution be amended to permit voting in person or by mail for a period of six business days prior to and including the Wednesday before the election day in ~~all~~ general elections**, but only if the legislature and the governor appropriate and disburse funds to pay for the increased costs of such voting**?

This modified summary language consists of 48 words, excluding articles.

## II.

In a second Point, Seay contends that the trial court erred in refusing to strike the pleadings filed by the Legislators' separate counsel. Seay argues that, because the Legislators' were sued only in their official capacities, the Attorney General has the exclusive authority to represent them in this litigation.

We need not decide this issue. "[I]t is not this Court's prerogative to offer advisory opinions on hypothetical issues that are not necessary to the resolution of the case before it." *State v. Self*, 155 S.W.3d 756, 761 (Mo. banc. 2005). In addition, under Rule 84.13(b), "[n]o appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action."

Seay has failed to identify any way in which he was materially prejudiced by the participation of the Legislators' separate counsel in this litigation. The Legislators' counsel did not seek any additional or different relief than that requested by the Attorney General, and merely argued the legal issues raised by the parties, which the trial court and this Court would have been required to decide even without the Legislators' separate briefing. Moreover, we expect that the Legislators would have been permitted to participate through separate counsel as *amicus curiae* in the trial court, and in this Court, even if their separate counsel was not

18

considered to be representing a party. In these circumstances, there is no need for this Court to address the additional issue Seay raises.

## Conclusion

The judgment of the circuit court is reversed. Pursuant to Rule 84.14, we enter the judgment the circuit court ought to have given, and certify to the Secretary of State the following official summary statement for HJR 90, to appear on the ballot at the November 4, 2014 general election:

> Shall the Missouri Constitution be amended to permit voting in person or by mail for a period of six business days prior to and including the Wednesday before the election day in general elections, but only if the legislature and the governor appropriate and disburse funds to pay for the increased costs of such voting?

_____
Alok Ahuja, Chief Judge

All concur.

SECOND REGULAR SESSION

[TRULY AGREED TO AND FINALLY PASSED]

SENATE SUBSTITUTE FOR

SENATE COMMITTEE SUBSTITUTE FOR

HOUSE COMMITTEE SUBSTITUTE FOR

# HOUSE JOINT RESOLUTION NO. 90

## 97TH GENERAL ASSEMBLY

2014

---

## JOINT RESOLUTION

Submitting to the qualified voters of Missouri an amendment to article VIII of the Constitution of Missouri, by adding thereto one new section relating to early voting.

---

*Be it resolved by the House of Representatives, the Senate concurring therein:*

That at the next general election to be held in the state of Missouri, on Tuesday next following the first Monday in November, 2014, or at a special election to be called by the governor for that purpose, there is hereby submitted to the qualified voters of this state, for adoption or rejection, the following amendment to article VIII of the Constitution of the state of Missouri:

Section A. Article VIII, Constitution of Missouri, is amended by adding thereto one new section, to be known as section 11, to read as follows:

**Section 11. 1. Qualified voters of the state shall be entitled to vote in person or by mail in advance of the day of the general election, but only under the following subdivisions:**

**(1) Qualified voters casting ballots under this section shall have been registered to vote, unless otherwise provided by law, on or before the fourth Wednesday prior to the day of the election;**

**(2) No qualified voter shall be required to state any reason, excuse, or explanation for casting a ballot under this section;**

**(3) Ballots shall be cast in person or by mail only during the six business days, not to include Saturday or Sunday, immediately prior to and including the last Wednesday prior to the election day. In-person ballots shall be cast at the local election authority during its regular business hours;**

**(4) Each local election authority shall appoint at least one election judge from each major political party to serve at the site of the local election authority. Procedures for appointing judges, casting ballots, and tabulating ballots shall be the same as provided by general election laws.**

**2. No local election authority or other public official shall, in advance of the day of the election, disclose the identity of any qualified voter who, in advance of the day of the election, has cast or has not cast a ballot, unless the qualified voter has authorized the disclosure. A qualified voter's authorization must be in writing, signed by the qualified voter, dated, and delivered to the secretary of state no later than the sixth Wednesday prior to the day of the election. An authorization is effective only for one general election.**

**3. If any local election authority is required by any provision of law or of this constitution to produce, in advance of the day of the election, a list of qualified voters who have already cast ballots, such list shall designate those qualified voters who have not filed a valid written authorization under subsection 2 of this section by using a random designation that does not identify those qualified voters or provide residential or other personal information from which their identities might be determined. If any such list is required to be delivered promptly after a request, the list shall be deemed to have been promptly delivered if it is delivered no later than 5:00 p.m. on the Monday before the election day. In addition to the restrictions in this section on the provision of identifying information, any such list shall include only qualified voter information authorized to be disclosed pursuant to general election laws.**

**4. The secretary of state and local election authorities shall provide qualified voters mail-in ballots under this section only by mail, and only upon the written, signed, and dated request of a qualified voter. Such request shall be valid for only one general election. No qualified voter shall receive more than one mail-in ballot.**

**5. No local election authority or other public office shall conduct any activity or incur any expense for the purpose of allowing voting in person or by mail in advance of the general election day unless a state appropriation is made and disbursed to pay the local election authority or other public office for the increased cost or expense of the activity.**

**6. The provisions of this section shall be self-executing. Any law that conflicts with this section shall not be valid or enforceable. If any provision of this section is found by a court of competent jurisdiction to be unconstitutional or unconstitutionally enacted, the remaining provisions of this section shall be and remain valid. Nothing in this section shall be deemed to repeal or invalidate section 7 of article VIII of this constitution or to repeal or invalidate general laws permitting certain qualified voters to cast absentee ballots. This section shall not be repealed or invalidated by constitutional amendment, in whole or in part, unless the text of the amending provision expressly references this section or the parts thereof that are to be repealed, and no part of this section shall be repealed by implication.**

Section B. Pursuant to chapter 116 and other applicable constitutional provisions and laws of the this state allowing the general assembly to adopt ballot language for the submission of this joint resolution to the voters of this state, the official summary statement of this resolution shall be as follows:

"Shall the Missouri Constitution be amended to permit voting in person or by mail for a period of six business days prior to and including the Wednesday before the election day in all general elections?"