

# SUPREME COURT OF MISSOURI
# en banc

WES SHOEMYER, DARVIN BENTLAGE  )
AND RICHARD OSWALD,  )
  )
  Plaintiffs,  )
  )
v.  )  No. SC94516
  )
MISSOURI SECRETARY OF STATE  )
JASON KANDER,  )
  )
  Defendant.  )
  )
  )

ORIGINAL PROCEEDING: ELECTION CONTEST

*Opinion issued June 30, 2015*

PER CURIAM

  The plaintiffs have filed an election contest challenging the summary statement in the ballot title of a proposed constitutional amendment. This case, like *Dotson v. Kander*, --- S.W.3d --- (Mo. banc 2015) (No. SC94482), decided today, raises the issue of whether a challenge to a ballot title may be brought after voters have adopted the measure.

  Because this Court held in *Dotson* that chapters 115 and 116[1] allow for such challenges, plaintiffs may bring this suit. The summary statement here was sufficient and

---

[1] All references are to RSMo 2000 unless otherwise noted.

fair.  This Court finds there was no election irregularity, and the results of the election are valid.

## I.  Factual Background

House Joint Resolution Nos. 11 & 7 (HJR 11), truly agreed to and finally passed by the General Assembly in 2013, referred a constitutional amendment to voters to add section 35 to article I of the constitution.  The measure was placed on the August 5, 2014, primary election ballot, and voters approved it.  The plaintiffs requested a recount of the election results, which confirmed that the measure passed.  Thirty days after the secretary of state certified the results from the recount, the plaintiffs filed an election contest in this Court pursuant to section 115.555, arguing that the ballot title was insufficient and unfair.[2]

## II.  Plaintiffs May Challenge Ballot Title Post-Election

Section 116.155.1 allows the General Assembly to write a summary statement and fiscal note for any statewide ballot measure that it refers to voters.  The summary statement must be a "true and impartial statement of the purposes of the proposed measure in language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure."  Section 116.155.2.  This summary is limited to 50 words, excluding articles.  *Id.*

Any citizen may challenge the summary statement in a *pre*-election challenge under section 116.190, RSMo Supp. 2013, and the challenger bears the burden of

---

[2] This Court has jurisdiction of this case pursuant to MO. CONST. art. VII, sec. 5 and section 115.555.  *See Dotson v. Kander*, ---S.W.3d --- (Mo. banc 2015) (SC94482); *Gantt v. Brown*, 149 S.W. 644, 646 (Mo. banc 1912); *see also Dotson v. Kander*, 435 S.W.3d 643 (Mo. banc 2014).

showing that the ballot title is "insufficient or unfair." *See* section 116.190.3. In contrast to a pre-election challenge under section 116.190, chapter 115 outlines the procedures for *post*-election challenges for irregularities that occur during elections. *See* sections 115.553, 115.593.

The state argues that the plaintiffs cannot challenge the fairness and sufficiency of the ballot title in a post-election challenge brought under chapter 115. This argument was rejected in *Dotson v. Kander*, decided today. --- S.W.3d --- (Mo. banc 2015) (SC94482). In *Dotson*, the plaintiffs sought to challenge the summary statement of a ballot title after the measure was adopted by voters. *Dotson* held that challenges to the summary statement of a ballot title may be brought either before the election pursuant to section 116.190 or after the measure has been adopted by voters in an election contest under chapter 115 so long as the issue has not been previously litigated and determined. *Id.* at --- (Slip op. at 7).

*Dotson* noted that courts have considered violations of election statutes to be "irregularities" that may be challenged after an election. *Id.* at --- (Slip op. at 5). Further, it reminded that section 116.020 states, in relevant part, that "[t]he election procedures contained in chapter 115 shall apply to elections on statewide ballot measures." *Id.* at --- (Slip op. at 5). The law allows the plaintiffs in this case to challenge the summary statement of the ballot title under chapter 115 even though the measure has already been adopted by voters.

The state also argues that this suit is untimely as it was filed nearly six weeks after the amendment became effective. *See* MO. CONST. art. XII, sec. 2(b) (amendments take

3

effect thirty days after approval). Section 115.577 provides an election contest under chapter 115 must be filed "[n]ot later than thirty days after the official announcement of the election result by the election authority." Here, the plaintiffs sought a recount after the election. As the results of the recount could potentially moot an election contest, this Court finds the thirty day filing period does not begin until the results are certified *after* a recount. This suit was timely filed thirty days after the secretary of state certified the results after the recount.

The state further contends that the plaintiffs' suit is barred by the doctrine of laches. As *Dotson* held that a challenge to a ballot title may be brought post-election, and the plaintiffs in this case filed the suit within thirty days of receiving the recount results, there was no unreasonable delay. This suit is not barred by doctrine of laches.

### III.    Ballot Title Was Sufficient and Fair

To be sufficient and fair, "the summary statement must be adequate and state the consequences of the initiative without bias, prejudice, deception, or favoritism." *Brown v. Carnahan*, 370 S.W.3d 637, 654 (Mo. banc 2012). It should accurately reflect both the legal and probable effects of the proposed initiative and be fair and impartial so that the voters are not deceived or misled, although it is not necessary to set out every detail of the proposal. *Id.* at 654, 656.

Here, the ballot summary in the ballot title was sufficient and fair. It asked the voters:

> Shall the Missouri Constitution be amended to ensure that the right of Missouri citizens to engage in agricultural production and ranching practices shall not be infringed?

4

HJR 11 proposed adding the following language to the constitution:

> That agriculture which provides food, energy, health benefits, and security is the foundation and stabilizing force of Missouri's economy. To protect this vital sector of Missouri's economy, the right of farmers and ranchers to engage in farming and ranching practices shall be forever guaranteed in this state, subject to duly authorized powers, if any, conferred by article VI of the Constitution of Missouri.

Plaintiffs first argue that the summary statement in HJR 11 was insufficient or unfair as it omitted that the right was subject to article VI of the constitution, which governs local governments. They rely on *Seay v. Jones*, which involved a challenge to a proposed constitutional amendment that would allow early voting, but only if funds were so appropriated. 439 S.W.3d 881 (Mo. App. 2014). In *Seay*, the proposed constitutional amendment stated, in relevant part, that no local election authority would "conduct any activity or incur any expense" for facilitating early voting "*unless* a state appropriation is made and disbursed to pay the local election authority . . . for the increased cost or expense of the activity." *Id.* at 885 (emphasis added). The summary statement proposed by the General Assembly did not reference the fact that early voting would only be available if the state appropriated funds. *See id.* at 889-90. The court of appeals found that this omission made the summary statement insufficient and unfair because the funding contingency was a significant limitation on the early voting rights and its omission was misleading to voters. *Id.* at 892.

*Seay* is distinguishable from the instant case. The right at issue in *Seay* – the availability of early voting – was expressly conditioned on whether the General

5

Assembly would fund it. Here, however, the "right to farm" is not expressly conditioned on a third-party action. While it is subject to local government regulation under article VI, the availability of the right is not dependent on local governments passing an appropriation or other condition precedent.

Further, the omission of a reference to limitations by article VI in the summary is not problematic as each section of the constitution is subject to limitations that may be found elsewhere in the constitution. *See State ex rel. Gordon v. Becker*, 49 S.W.2d 146, 147 (Mo. banc 1932) (stating that the constitutional grant of legislative authority to the General Assembly is "subject to all the limitations, express or implied, contained in the Constitution"). In this context, local governments have always had the powers enumerated in article VI, and the addition of this amendment does not alter or change article VI in any way. Nor, conversely, does article VI limit the "right to farm" in such a way that it was necessary to include this limitation in the summary statement because local governments have *always* had the authority granted to them under article VI. As there was no change in the law, this omission did not render the ballot title insufficient or unfair. *See Dotson*, --- S.W.3d at --- (Slip op. at 9).

Additionally, the purpose of the amendment is to ensure that the "right to farm" "shall be forever guaranteed in this state." MO. CONST. art. I, sec. 35. This was effectively communicated to voters by asking them "Shall the Missouri Constitution be amended to ensure [the enumerated rights] shall not be infringed?" "Shall not be infringed" does not imply that the right would be unlimited or completely free from regulation, as no constitutional right is so broad as to prohibit all regulation. *See Dotson*,

6

--- S.W.3d at --- (Slip op. at 12) (noting restrictions on the right to bear arms). As any limitation on the "right to farm" by article VI did not go to the purpose of the amendment, it did not need to be referenced in the summary statement.

The plaintiffs next argue that the summary statement inaccurately identified "citizens" as the beneficiaries of the rights enumerated in the amendment while the actual amendment applies to "farmers and ranchers." These terms are not defined in the amendment, and the plaintiffs contend that the terms "farmers and ranchers" are broad enough to include any entity engaged in farming or ranching regardless of whether it is a Missouri citizen. Even if the plaintiffs are correct, this would not render the ballot title insufficient or unfair or insufficient. If the amendment affords protection for *more* classes of people than "citizens," it also makes the right available to Missouri citizens. It was not insufficient or unfair to use "citizens" rather than "farmers and ranchers" in the ballot title.

## IV. Conclusion

The plaintiffs were entitled to bring a post-election challenge the ballot title in HJR 11. As the ballot title was sufficient and fair, there was no election irregularity, and the results of the election adopting this amendment are valid.

Russell, C.J., Breckenridge,
Fischer and Wilson, JJ., concur;
Teitelman, J., concurs in result;
Stith, J., dissents in separate opinion filed;
Draper, J., concurs in opinion of Stith, J.

7



# SUPREME COURT OF MISSOURI
## en banc

WES SHOEMYER, DARVIN BENTLAGE,     )
AND RICHARD OSWALD,     )
    )
        Plaintiffs,     )
    )
v.     )     No. SC94516
    )
MISSOURI SECRETARY OF STATE     )
JASON KANDER,     )
    )
        Defendant.     )

## DISSENTING OPINION

I respectfully dissent. The principal opinion holds that the challenge to the summary statement of the ballot title was timely because chapter 115, RSMo, in contrast to chapter 116, RSMo, allows for a post-election challenge. I disagree with the principal opinion's construction of chapter 115 to apply to challenges to a ballot title. As discussed in greater detail in my separate opinion in *Dotson v. Kander, -- S.W.3d -- (Mo. banc 2015) (No. SC94482) ("Dotson II")* (Stith, J., concurring in result), a challenge to a ballot title can be brought only prior to an election under chapter 116. Ballot title errors are not "irregularities" in an election as contemplated by chapter 115. I, therefore, would not permit the filing of a challenge to a ballot title after the election in the first instance.

The principal opinion relies on *Dotson v. Kander, 435 S.W.3d 643 (Mo. banc 2014) (Dotson I)* and *Dotson II* to justify the use of chapter 115 to allow the filing of a

post-election challenge to a ballot title even when no petition challenging the ballot title was filed pre-election as required by section 116.190, RSMo Supp. 2013. *Dotson II* so held because the Court believed itself bound by dicta in *Dotson I*, which so permitted. I concurred in *Dotson I*, but, for the reasons stated in my separate opinion in *Dotson II*, it is now evident that this dicta in *Dotson I* simply was incorrect and stands as an abject demonstration of the dangers of obiter dictum, particularly when, as in *Dotson I*, that issue was not briefed or argued.

Chapter 116 governs ballot-title challenges and, as such, section 116.190 mandates that a ballot title challenge must be brought within 10 days of certification of a matter for the ballot. Chapter 116 does not provide that, alternatively, such a challenge may be brought after the election under chapter 115. Such challenges must initially be brought prior to the election so that, if possible, they can be determined prior to the election, allowing correction of any unfairness and insufficiency in the ballot title in most instances.

When, as in *Dotson II*, there is insufficient time to finally determine the fairness and sufficiency issues prior to six weeks before the election at which the matter will be voted, then the matter may continue until resolution even if that means that it is not finally resolved until after the election. But here, because no petition challenging the ballot title was filed prior to the election as required by section 116.190, the petitioners may not for the first time file a challenge to the ballot title under chapter 115.

Certainly there is no reason to doubt that in the instant case the post-election challenge under chapter 115 was made in good faith reliance on *Dotson I*. But permitting

2

such challenges first to be brought after an election invites sandbagging – waiting to see if a measure passes and only challenging the ballot title if the measure does pass, when it is too late to correct the ballot title.

Because the challenge was not brought prior to the election as mandated by chapter 116, I would hold that the challenge is untimely.

_____

**LAURA DENVIR STITH, JUDGE**