

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| ROBERT J. BELL, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD77464 |
| | ) | |
| PAULA PHILLIPS, et al., | ) | FILED: July 28, 2015 |
| Respondents. | ) | |

**Appeal from the Circuit Court of Cole County**
**The Honorable Daniel R. Green, Judge**

**Before Division Four: Alok Ahuja, C.J., and Lisa White Hardwick**
**and Mark D. Pfeiffer, JJ.**

Robert Bell, an inmate in the custody of the Missouri Department of Corrections, appeals the dismissal of his petition, which asserted a claim under 42 U.S.C. § 1983 for denial of access to the courts. We reverse, and remand to the circuit court for further proceedings.

## Factual Background

In his second amended petition, filed *pro se*, Bell alleged a host of civil rights violations by employees at the Southeast Correctional Center in Charleston. Only Bell's allegations against defendant Paula Phillips, identified as a "Functioning Unit Manager," are relevant to this appeal. Bell's second amended petition alleged that he "had to go to Phillip's [sic] office because that was the only way that I could get a law library pass or get legal supplies." In the same paragraph, Bell's petition alleged that "I was denied access to the law library and legal supplies

like copies of my legal work and postage to mail my habeas corpus applications and to file this

instant civil rights complaint."

Bell's petition continued by alleging that

> MS. PAULA PHILLIPS, she did everything she could do to deny me access to the law library and . . . she also refused me any type of legal resources, like pens and envelopes for my legal documents and the other officers followed her lead. [A]lthough they all knew that I was an indigent prisoner, Phillips, she even went so far as to demand her officers to not allow me anything and to put me in the hole if I asked for anything. So I filed a grievance against her because legal access for indigents (like myself) constitutionally are suppose[d] to be supplied with legal materials like postage, pens and paper should be given to me "FREE OF CHARGE." Ms. Phillips retaliated by forcing me to work in the chow hall on February 17 thru [sic] the 20th[, 2010,] against my doctor's orders. See, the Grievance Appeal Tracking No. SECC10-305, 305, 2115 and SECC-11-570.

Bell's petition alleged that, in the grievance proceeding, "the officers said, 'they will not provide

me with the needed legal materials, (free or otherwise)."

Bell's petition also alleged that, as a result of the denial of necessary postage, he had been

unable to timely file his federal *habeas corpus* petition:

> [T]he dept. of corrections refuse[s] to provide indigent inmates like myself reasonable access to legal materials like photocopies and postage "FREE OF CHARGE," which is part of receiving reasonable access to the courts. . . . *Due to the fact that I did not have the $5.10 to mail my Federal Writ of Habeas Corpus and the accompanying exhibits during the early months of 2010 the Court ruled that my petition was untimely.* . . . [T]he Dept's policy denies me the first amendment right to have reasonable access to the courts. See, Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L.Ed.2d 72 (1977) and Gluth v. Kangas, 951 F.2d 1506 (9th Cir. 1991).

(Emphasis added.)

Phillips attacked Bell's court-access claim in a motion for judgment on the pleadings.

The motion argued a single basis for dismissing Bell's claim: that "Mr. Bell does not plead any

facts to suggest he has suffered actual injury, *such as missing a court imposed deadline*."

(Emphasis added.)

In response to Phillips' motion, Bell filed an affidavit which reiterated that he had been denied the $5.10 in postage necessary to timely file his federal *habeas corpus* petition. In reply suggestions, Phillips argued that "[t]his factual assertion does not appear in Mr. Bell's Second Superseding Amended Petition. In fact, *this is the first time Mr. Bell has ever claimed he did not receive $5.10 to mail a petition for habeas corpus*." (Emphasis added; footnote omitted.)

Following a hearing, the trial court granted Phillips' motion for judgment on the pleadings, and dismissed Bell's petition with prejudice. The court's judgment stated that it issued its ruling "[f]or the reasons set out in the respondents' . . . motion for judgment on the pleadings." Bell appeals.

## Standard of Review

"A court's grant of judgment on the pleadings is reviewed *de novo*." *Seay v. Jones*, 439 S.W.3d 881, 887 (Mo. App. W.D. 2014) (citation omitted).

> On appeal from the trial court's grant of Respondents' motion for judgment on the pleadings, we review the allegations of Appellants' petition to determine whether the facts pleaded therein are insufficient as a matter of law. The party moving for judgment on the pleadings admits, for purposes of the motion, the truth of all well pleaded facts in the opposing party's pleadings. The position of a party moving for judgment on the pleadings is similar to that of a movant on a motion to dismiss; i.e., assuming the facts pleaded by the opposite party to be true, these facts are, nevertheless, insufficient as a matter of law. A trial court properly grants a motion for judgment on the pleadings if, from the face of the pleadings, the moving party is entitled to a judgment as a matter of law.

*State ex rel Nixon v. Am. Tobacco Co., Inc.*, 34 S.W.3d 122, 134 (Mo. banc 2000) (citations and internal quotation marks omitted).[1] "The facts alleged in the petition are . . . construed liberally in favor of the plaintiff,"[2] and we give the plaintiff "the benefit of all reasonable inferences

---

[1] Although Bell's petition asserts a claim under 42 U.S.C § 1983, "[w]hen an action under Section 1983 is filed in state court, the state's rules of civil procedure apply, not the federal rules." *Charron v. Holden*, 111 S.W.3d 553, 555 (Mo. App. W.D. 2003) (citations omitted).

[2] *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. banc 2014) (quoting *Ward v. W. Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. banc 2013)).

drawn" from the petition's allegations. *Seay*, 439 S.W.3d at 887 (quoting *Emerson Elec. Co. v. Marsh & McLennan Cos.,* 362 S.W.3d 7, 12 (Mo. banc 2012)).

In this case, the circuit court stated that it was dismissing Bell's claim "[f]or the reasons set out in the respondents' . . . motion for judgment on the pleadings." Therefore, unless we can sustain the dismissal on the basis asserted in Phillips' motion, we must reverse. *See In re Estate of Austin*, 389 S.W.3d 168, 171 (Mo. banc 2013); *Zinke v. Orskog*, 422 S.W.3d 422, 425 (Mo. App. W.D. 2013).

### Analysis

The Supreme Court of the United States has held that that the United States Constitution requires state prison officials to give inmates "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996) (citing *Bounds* v. *Smith*, 430 U.S. 817 (1977)).

> Inmates undeniably enjoy a constitutional right of access to the courts and the legal system. To protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared.

*Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (citing *Casey,* 518 U.S. at 350-51, and *Bounds,* 430 U.S. at 821, 824-28).

Similarly, the Missouri Supreme Court has recognized "[t]he [United States] Constitution requires that inmates be provided . . . the tools needed 'to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.'" *Bromwell v. Nixon*, 361 S.W.3d 393, 399 (Mo. banc 2012) (quoting *Casey*, 518 U.S. at 355). "To succeed on an 'access to the courts' claim, [inmates] must show (1) that they were denied 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts' and (2) that they suffered actual injury." *Id.* at 400 (quoting *Casey*, 518 U.S. at 351).

4

Bell's petition sought to assert a claim against Phillips under 42 U.S.C. § 1983 for denial of his constitutional right of access to the courts. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Mo.*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir.1990)). To state a § 1983 claim, a plaintiff must "allege facts supporting any individual defendant's personal involvement or responsibility for the violations." *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also State ex rel. Hill v. Travers*, 602 S.W.2d 856, 859 (Mo. App. E.D. 1980) (finding "it is necessary to establish actual personal knowledge or involvement" to support a § 1983 claim).

Phillips' motion for judgment on the pleadings contended that Bell's petition had failed to allege actual injury from any denial of access to the courts. The Missouri Supreme Court has recognized that actions which frustrate an inmate's ability to file a *habeas corpus* petition satisfy the actual injury requirement. In *Bromwell*, the Court stated that the inmates in that case had not adequately alleged actual injury "[b]ecause [they] have not pleaded that they have been unable to file petitions for writs of habeas corpus due to any or all of the . . . alleged insufficiencies" in the legal resources made available to them. 361 S.W.3d at 399; *see also id.* 400 (noting that petition failed to allege that "any inmate has been unable to file a habeas petition as a result of" insufficient legal resources). Similarly, *Casey* held that inmates are entitled to the resources reasonably necessary "to attack their sentences, directly or collaterally." 518 U.S. at 355.

Although Phillips inaccurately claimed otherwise in the circuit court, Bell's petition expressly alleged that "[d]ue to the fact that I did not have the $5.10 to mail my Federal Writ of Habeas Corpus and the accompanying exhibits during the early months of 2010 the Court ruled that my petition was untimely." Bell's allegation that the failure to provide him with necessary

postage resulted in the dismissal of his federal *habeas* petition is precisely the sort of actionable injury contemplated in *Casey* and *Bromwell*. Indeed, in her briefing in the trial court, Phillips herself acknowledged that "missing a court imposed deadline" would constitute a sufficient injury to support Bell's claim.

In this Court, Phillips acknowledges (despite her contrary representations to the circuit court) that Bell's petition adequately alleged that he had been denied the postage necessary to file his federal *habeas* petition. On appeal, Phillips shifts her focus. She now argues that Bell's petition fails to adequately allege that <u>she</u> was involved in denying Bell the postage he needed. Phillips did not make this argument in the circuit court. But it is unpersuasive anyway. Bell's petition alleged that going to Phillips' office "was the only way that I could . . . get legal supplies." Bell alleged that Phillips "refused me any type of legal resources," and instructed "her officers" to do likewise, and to discipline Bell if he "asked for anything." Bell alleged that he filed a grievance against Phillips because she had violated his right "to be supplied with legal materials like postage, pens and paper" without charge, and that she retaliated against him for filing this grievance. Bell alleged that, in the grievance proceeding, the officers stated that they would "not provide [Bell] with the needed legal materials, (free or otherwise)." Bell's petition also alleged that "the dept. of corrections refuse[s] to provide indigent inmates like myself reasonable access to legal materials like photocopies and postage 'FREE OF CHARGE,' which is part of receiving reasonable access to the courts," and that "due to the fact that I did not have the $5.10 to mail my Federal Writ of Habeas Corpus[,] . . . the Court ruled that my petition was untimely."

Phillips focuses on the last two quoted statements, and emphasizes that those allegations only assert that *the Department of Corrections*, rather than Phillips personally, denied Bell the

postage he needed. Phillips reads the petition too technically. The petition alleges that Phillips was Bell's "only" source of access to necessary legal materials during the time period (early 2010) in which his federal *habeas* petition was filed, that she "refused [him] any type of legal resources" during that time, and that she instructed "her officers" to do likewise. Construing the allegations of the petition liberally, as we must, Bell's later references to the *Department of Corrections'* refusal to provide him with necessary postage are reasonably read to refer to Phillips herself, and/or other officers acting according to her instructions. While it may have been preferable for Bell to have alleged additional details concerning the denial of the necessary postage, "[a] petition does not have to plead operative or evidentiary facts, so it will survive dismissal if it pleads ultimate facts and not conclusions." *LeBlanc v. Research Belton Hosp.*, 278 S.W.3d 201, 207 (Mo. App. W.D. 2008); *see also First Nat'l Bank of Ft. Smith v. Kansas City S. Ry. Co.*, 865 S.W.2d 719, 728 (Mo. App. W.D. 1993) ("A party must plead only ultimate facts in his petition. Evidentiary facts supporting ultimate facts are not requisites.").

We therefore conclude that Bell's petition adequately alleged that Phillips refused to provide him with access to the materials, including postage, which he required in order to prosecute his federal *habeas corpus* petition, and that as a result his *habeas* petition was dismissed as untimely. These allegations were sufficient to state a claim against Phillips for denial of access to the courts under *Casey*, *Bromwell*, and related cases. The dismissal of Bell's court-access claim must accordingly be reversed, and the case remanded to the circuit court for further proceedings on that claim. This opinion only addresses the argument for dismissal which Phillips advanced in her motion for judgment on the pleadings; our opinion should not be read to address any other issues, or the ultimate merits of Bell's claim.

**Conclusion**

The circuit court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Chief Judge

All concur.