Mary HILL, et al., Appellant-
Respondents,

v.

John R. ASHCROFT, Secretary
of State of Missouri,
Respondent,

Mike Louis, Respondent-Appellant.

WD 80613 Consolidated with WD 80614,
WD 80615, WD 80616, WD 80617, WD
80618, WD 80619, WD 80620, WD 80621,
WD 80622, WD 80623, WD 80627, WD
80631, WD 80632, WD 80633, WD 80634,
WD 80635, WD 80636, WD 80637, WD
80638, WD 80639 and WD 80641

Missouri Court of Appeals,
Western District.

OPINION FILED: June 27, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied
August 1, 2017

W. James Young, and Robert Ryan Harding, Springfield, MO, for appellant-respondents Hill, Stickler and Briggs.

Edward D. Greim, Kansas City, MO, for appellant-respondent Evans.

Michael Martinich-Sauter, and Jason Krol Lewis, co-counsel, Jefferson City, MO, for respondent Ashcroft.

Jeremy A. Root, Jefferson City, MO, for respondent-appellant Louis.

Before Special Division: Mark D. Pfeiffer, Chief Judge, Presiding, Karen King Mitchell, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

This appeal raised issues regarding the summary statements of ten ballot initiative petitions filed with the Missouri Secretary of State ("Secretary of State"). The initiatives all seek to amend the Missouri Constitution to modify the collective bargaining rights between employees and employers. Mary Hill, Michael J. Briggs, and Roger Bruce Stickler (collectively, the "Hill Plaintiffs"), along with John Paul Evans ("Plaintiff Evans") (collectively, "Plaintiffs") brought suit in the Circuit Court of Cole County, Missouri, claiming that the ten ballot summaries drafted for the initiatives were unfair or inadequate pursuant to section 116.190.[1] The court agreed and certified new ballot summaries for each initiative petition. Plaintiffs ap-

---

1. All statutory citations are to RSMo 2000 as currently updated, unless otherwise noted.

peal collectively challenging the circuit court's finding that the proposed ballot summaries were sufficient and fair at the time they were drafted. Additionally, Plaintiff Evans raises two points on appeal challenging the procedure by which the Secretary of State collected public comments regarding the proposed ballot summaries. Mike Louis ("Louis"), the proponent of the ten initiative petitions, cross-appeals from the same judgments raising three points on appeal alleging the trial court erred in redrafting the proposed ballot summaries which were originally drafted by the Secretary of State. The Secretary of State responds to the Plaintiffs' appeal but does not join in Louis's cross-appeal. We affirm in part, reverse in part, and we certify the original summary statements as drafted by the Secretary of State (collectively, the "Summary Statements"), with the exception of two Summary Statements that shall be certified as amended by this opinion.

## Factual Background

On December 9, 2016, Louis submitted eight initiative petition sample sheets [2]—a proposed initiative petition in the form it will be circulated to collect signatures before being placed on the ballot—to the Secretary of State.[3] Three days later, Louis submitted two additional initiative petition sample sheets [4] (collectively, the

"Initiative Petitions"). While the ten Initiative Petitions differ in minor ways, there are five sets of two nearly identical Initiative Petitions [5] and all would amend Article I of the Missouri Constitution to, in effect, prohibit the enactment of laws limiting employee unions and employers from collective bargaining over the conditions of employment. The language of each Initiative Petition is set out in its entirety and discussed below.

On December 22, 2016, then Missouri Attorney General Chris Koster ("Attorney General Koster") approved the form of Initiative Petitions 2018-092 through 2018-099, and on December 23, 2016, Attorney General Koster approved the form of Initiative Petitions 2018-101 and 2018-102.

On December 28, 2016, Secretary Kander transmitted Summary Statements for each of the Initiative Petitions to Attorney General Koster. Attorney General Koster approved each Summary Statement, pursuant to section 116.160. On the morning of January 9, 2017, just prior to leaving office, Secretary Kander approved the official ballot title [6] for each Initiative Petition.

On January 19, 2017, Plaintiffs brought eleven separate lawsuits relating to the Initiative Petitions. The Hill Plaintiffs alleged that each of the Summary Statements was unfair and insufficient under section 116.190. Plaintiff Evans raised the

---

**2.** Eventually denominated as 2018-092 through 2018-099.

**3.** At that time, Secretary of State was Jason Kander ("Secretary Kander"). Secretary Kander was replaced by Secretary John R. Ashcroft ("Secretary Ashcroft") at noon on January 9, 2017. Although the actions in question were taken by Secretary Kander, Secretary Ashcroft as the present Secretary of State is the proper party to this appeal.

**4.** Eventually denominated as 2018-101 and 2018-102.

**5.** The only difference between these pairs is that one petition of each pair contains the following introductory paragraph:

NOTICE: You are advised that the proposed constitutional amendment may change, repeal, or modify by implication or may be construed by some persons to change, repeal or modify by implication Section 290 of the Missouri Revised Statutes.

**6.** Section 116.010(4) sets forth the requirements of the ballot title, which includes the summary statement and a fiscal note summary.

same challenges but, in addition, claimed that Secretary Kander had failed to comply with the public comment procedure established by section 116.334.1, and that, as a result, the Summary Statements were invalid (collectively, the "Lawsuits"). Plaintiff Evans sought declarations that the Summary Statements were unfair or insufficient and sought declaratory relief to reopen the public comment period. The Lawsuits were consolidated before the trial court for hearing.

While the underlying Lawsuits were pending, the Missouri General Assembly passed Senate Bill 19 ("SB19"). SB19 was passed by the Legislature on February 2, 2017, signed by Missouri Governor Eric Greitens ("Governor Greitens") on February 6, 2017, and will become effective August 28, 2017.[7] With certain exceptions, SB19 generally bars any requirement that employees, as a condition of employment, become, remain, or refrain from becoming a member of a labor union or pay dues or other charges to a labor union.

The parties filed cross-motions for judgment on the pleadings. The circuit court conducted a hearing and argument on the Lawsuits on March 2, 2017. The circuit court entered two judgments on March 23, 2017. As to the Lawsuits brought by the Hill Plaintiffs, the circuit court found in favor of the Hill Plaintiffs on all counts ("Hill Judgment"). Specifically, the court found that although the Summary Statements may have been fair and sufficient at the time they were drafted, the subsequent passage of SB19 rendered them unfair and insufficient. The trial court redrafted the Summary Statements and certified new language (collectively, "Amended Summary Statements"). As to Plaintiff Evans's Lawsuit, the circuit court similarly held

the Summary Statements unfair or insufficient and ordered the Amended Summary Statements to be entered. But, as to Evans's other two counts alleging failure of the Secretary of State to comply with section 116.334.1 in regard to the public comment period, the court found in favor of the Secretary of State and Louis ("Evans Judgment").

## Standard of Review

■ "*De novo* review of the trial court's legal conclusions about the propriety of the secretary of state's summary statement ... is the appropriate standard of review when there is no underlying factual dispute that would require deference to the trial court's factual findings." *Brown v. Carnahan,* 370 S.W.3d 637, 653 (Mo. banc 2012); *Billington v. Carnahan,* 380 S.W.3d 586, 591 (Mo. App. W.D. 2012) (*de novo* review where parties filed stipulated facts).

■ "To avoid encroachment on the people's constitutional authority, courts will not sit in judgment on the wisdom or folly of the initiative proposal presented [....]" *Brown,* 370 S.W.3d at 645. "When courts are called upon to intervene in the initiative process, they must act with restraint, trepidation and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." *Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824, 827 (Mo. banc 1990).

The parties entered into stipulated facts which are not in dispute.

## Analysis

The Secretary of State is responsible for drafting the official summary statements for constitutional amendments proposed by

---

7. Although not entered into the record, we take judicial notice of SB19 pursuant to *Schweich v. Nixon,* 408 S.W.3d 769, 778 n.11

(Mo. banc 2013). A copy of the enacted SB19 is included in the Legal File.

initiative petitions. Section 116.190.1. Missouri citizens are authorized to seek judicial review of the official ballot title if the citizen believes the summary statement portion of the ballot title is "insufficient or unfair." Section 116.190.3.

### General Principles Regarding Summary Statements

 The summary materials provided in the ballot title are intended to provide voters with enough information that they are made aware of the subject and purpose of the initiative and allow the voter to make an informed decision as to whether to investigate the initiative further. *See Protect Consumers' Access to Quality Home Care Coal., LLC v. Kander*, 488 S.W.3d 665, 671 (Mo. App. W.D. 2015). "It is incumbent upon the Secretary in the initiative process to promote an informed decision of the probable effect of the proposed amendment." *Cures Without Cloning v. Pund*, 259 S.W.3d 76, 82 (Mo. App. W.D. 2008). A summary statement is not intended to, nor often can it, give voters detailed information about the proposed measure. *Mo. Mun. League v. Carnahan*, 364 S.W.3d 548, 553 (Mo. App. W.D. 2011) ("[a]ll that is required is that the language fairly summarizes the proposal in a way that is impartial and does not deceive or mislead voters."). It is the responsibility of each voter to educate himself or herself about the proposed measure, and it is the role of those supporting or opposing the measure to articulate their views of its impact through the political process. Precedent indicates that the use of broad, over-inclusive language is acceptable and does not run contrary to the requirements that the summary be "a concise statement . . . using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure." Section 116.334.1. Such precedent is not surprising since the Secretary of State

is often tasked with drafting summary statements for measures that include multiple and/or complex provisions. A summary statement that is broad enough to put voters on notice of the important aspects of such a measure may be broad so as to encompass matters not included in the measure so long as it is not deceptive, misleading, or argumentative. The question presented by this case is whether a broad summary statement is insufficient or unfair when the actual measure is more limited in its breadth that the summary statement and could have been summarized using more narrowly tailored language.

 The party challenging the language of the summary statement bears the burden to show that the language is insufficient or unfair. *Archey v. Carnahan*, 373 S.W.3d 528, 532 (Mo. App. W.D. 2012) (internal quotation omitted). "Insufficient means 'inadequate; especially lacking adequate power, capacity, or competence.' The word 'unfair' means to be 'marked by injustice, partiality, or deception.' Thus, the words insufficient and unfair . . . means to inadequately and with bias, prejudice, deception and/or favoritism state the [consequence of the initiative]." *State ex rel. Humane Soc'y of Mo. v. Beetem*, 317 S.W.3d 669, 673 (Mo. App. W.D. 2010) (quoting *Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo. App. W.D. 1994)).

### I. Procedural Claims (Evans Points I and II)

While the Hill Plaintiffs challenge only the language of the Summary Statements themselves, Plaintiff Evans also raises two procedural issues regarding alleged violations of the public comment period, which, if found to have merit, would effectively moot the substantive issues presented by this case. Thus, we begin with Points Re-

lied On I and II of Plaintiff Evans's appeal.

## A. Public Comment Period Section 116.334

Plaintiff Evans alleges that the circuit court erred in holding that the Secretary of State complied with the public comment process for initiative petitions as established in section 116.334.1.

Plaintiff Evans's Lawsuit sought injunctive relief under section 536.150, arguing that the Secretary of State failed to properly fulfill his duties under section 116.334. Section 536.150 "provides that a party may seek review of administrative action taken without a hearing and for which no other means of review is provided if the person alleges the action was unconstitutional, unlawful, unreasonable, arbitrary, or capacious." *Conseco Fin. Servicing Corp. v. Mo. Dept. of Rev.*, 195 S.W.3d 410, 419 (Mo. banc 2006); Section 536.150.

Section 116.334.1 states that "[f]or a period of fifteen days after the petition is approved as to form, the secretary of state shall accept public comments regarding the proposed measure and provide copies of such comments upon request." This section further requires the Secretary of State to prepare the summary statement and send it to the attorney general within twenty-three days after approval of the form of the petition. Section 116.334.1. First, Plaintiff Evans argues that the Secretary of State failed to comply with this statute because it drafted the Summary Statements and sent them to the Attorney General *before* the expiration of the fifteen-day public comment period.

 "When engaging in statutory construction, the primary purpose is to ascertain the legislature's intent from the language used and to give effect to that intent if possible." *Frye v. Levy*, 440 S.W.3d 405, 420 (Mo. banc 2014). We do not apply a "hyper-technical" reading but instead try to apply a logical and reasonable meaning to the words of the statute. *Id.* "When interpreting statutes, courts do not presume that the legislature has enacted a meaningless provision." *Edwards v. Gerstein*, 237 S.W.3d 580, 581 (Mo. banc 2007). It is this mandate to presume some function to statutes that Plaintiff Evans argues mandates that the Secretary of State must allow public comments for a minimum of fifteen days *prior* to drafting and sending a summary statement to the Attorney General. We disagree.

 There is nothing in the language of section 116.334 that states that the Secretary of State must wait fifteen days before sending a summary statement to the Attorney General. To reach this conclusion, we would have to read such language into the statute based on the legislature's supposed *intent.* However, courts "do not engraft language onto a statute that the legislature did not provide." *Page v. Scavuzzo*, 412 S.W.3d 263, 267 (Mo. App. W.D. 2013). Plaintiff Evans argues that we should read into the statute such an intent because otherwise the statute is meaningless. We again disagree. The statute mandates that public comments be collected but it does not provide that the Secretary of State is required to consider them or otherwise incorporate them into the summary statements. The purpose of the statute, as it is written, is to give an *opportunity* for the public to voice concerns and for those concerns to be collected and publicly available in one location. This serves an important function in and of itself. If members of the public choose to challenge the fairness or sufficiency of a summary statement under section 116.190, the public comments collected by the Secretary of State may be obtained and used to bolster a party's claim and voters may view and consider those public comments

in deciding whether to support or oppose a measure.

 Plaintiff Evans argues that this interpretation "disjoins the public comment process from the summary statement process." However, there is nothing about section 116.334 that requires the public comments to be incorporated into the drafting of summary statements. The Secretary of State is free to give as much or as little attention and weight to the comments as he or she so chooses. This includes drafting a summary statement while still accepting public comments. Though it may not be a wise decision and may cause additional litigation that could have been avoided if the Secretary of State had fully considered all public comments prior to drafting the Summary Statement, the legislature gives the Secretary of State the discretion to make that choice. Based on the language of section 116.334, we are unpersuaded by this argument of Plaintiff Evans.

The Secretary of State approved the Initiative Petitions as to form on December 22, 2016 and December 23, 2016. The fifteen-day public comment period ran from those dates to January 6, 2017 and January 7, 2016, respectively, and the Secretary of State accepted public comments during those time periods. The Summary Statements were then finalized on the morning of January 9, 2017, more than fifteen days after the Initiative Petitions were approved as to form. We find that the Secretary of State fully complied with the requirements of the provisions of section 116.334.

 Plaintiff Evans further notes that while public comments might have been accepted for fifteen days, the Secretary of

State originally published that it would accept public comments for a thirty-day period. Plaintiff Evans argues that the Secretary of State denied him his right to submit a public comment because he submitted his comment *after* the fifteen-day period expired but *before* the thirty-day period expired. Although we might agree that the Secretary of State misrepresented [8] to the public the period during which it would accept public comment, Plaintiff Evans is unable to point to a legal right or obligation that was violated by the Secretary of State. The public notice stating a thirty-day comment period was not legally binding. It did not confer upon the public some legal right which Plaintiff Evans may now enforce. Plaintiff Evans had the legal right to submit comments for fifteen days under section 116.334. He is not entitled to injunctive relief to require the Secretary of State to keep the public comment period open beyond that required timeframe. Further, as previously noted, the Secretary of State is not obligated to consider the public comments in drafting the summary statement, but the Secretary's only obligation is to allow for public comment, retain those comments, and make them available upon request. If the Secretary of State wished to keep the comment period open for longer period than fifteen days, he/she may do so as long as he/she retains those comments made during the entire period, makes them available upon request, and he/she complies with the statutory obligation to prepare the summary statement and send it to the attorney general within twenty-three days after approval of the form of the petition. Section 116.334.

This finding is true even under an argument that the Secretary of State's actions

---

8. We do not mean to suggest that the misrepresentation was intentionally made. This case poses a unique set of circumstances in which the sitting administration sought to complete certain tasks prior to the expiration of Secretary of State's term of office.

were "unreasonable, arbitrary, capricious, and an abuse of discretion." Plaintiff Evans argues that "[t]o meet basic standards of due process and to avoid being arbitrary, unreasonable, or capricious, an agency's decision must be made using some kind of objective data rather than mere surmise, guesswork, or 'gut feeling.'" *Mo. Nat. Educ. Ass'n v. Mo. State Bd. Of Educ.*, 34 S.W.3d 266, 281 (Mo. App. W.D. 2000). First, as noted above, section 116.334 provides clear and unquestionable guidelines for a fifteen-day comment period. The Secretary of State was free to hold open comments for thirty days, but we disagree that it was "unreasonable, arbitrary, capricious, and an abuse of discretion" to otherwise end the comment period before the expiration of that thirty-day period. Secretary of State Kander's term of office ended prior to the expiration of the thirty-day comment period. It is reasonable and within reasonable expectations that the Secretary of State may not bind his successor to accept public comments past the change in administration, so long as he complied with the fifteen-day period mandated by the statute. The public notice did not afford a legal right to a thirty-day comment period, and the Secretary of State's decision to terminate the comment period early was reasonable under the circumstances. In addition, even though the Secretary of State may keep the comment period open longer than the required fifteen days, he must still comply with the statutory mandate that he draft and submit the summary statements to the Attorney General within twenty-three days. *See* Section 116.334.1. Thus, even granting a thirty-day comment period, the Secretary of State would have been legally required to send the summary statements to the Attorney General prior to the expiration of the comment period.

▮ Further, Plaintiff Evans argues that the Secretary of State violated section 116.334.1 by failing to properly notify the public as to the dates the public comment period began or ended. Similarly, this argument attempts to impose a duty upon the Secretary of State that is not required by the statute. Had the legislature intended to require the Secretary of State to notify the public when the fifteen-day comment period for an initiative petition begins or ends, it could have easily done so within the text of section 116.334. Instead, Plaintiff Evans argues that we should impose such a requirement because surely that was the legislature's intent. "If the intent of the legislature is clear and unambiguous, by giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011).

▮ Plaintiff Evans argues in his reply brief that he does not ask for publication of the dates but merely for the "sample petition to be available on the secretary of state's website" as required under section 116.332.2. Plaintiff Evans claims that this never happened with the Initiative Petitions. The Stipulated Facts, however, state that the Initiative Petitions were posted on the Secretary of State's website on December 13, 2016, and the website specifically provided that the public comment period was currently open. Although the statement erroneously declared that public comments would be open for thirty days, the requirement of section 116.332.1, that the sample petitions be available on the Secretary of State's website, was fulfilled. The joint stipulation that the "Secretary of State's website did not state the *dates* that the Secretary of State approved the form of the Initiative Petitions" is immaterial

because section 116.332.1 does not require the publication of any dates in order for the sample petition to be available. (emphasis added). To the extent a party is concerned about being able to comment on a proposed petition, it should not delay. Certainly nothing prohibits the Secretary of State from providing additional information regarding the dates and time periods, even though not required by the statute.

■ We do not agree that the stipulated facts demonstrate that a violation of the comment period occurred. Nor do we agree that this creates an entitlement to a declaration that the Official Ballot Titles for the Initiative Petitions are invalid and that Plaintiff Evans is entitled to a mandatory injunction. As Plaintiff Evans notes, a declaratory judgment generally requires:

> (1) a justiciable controversy that presents a real, substantial, presently existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, "consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief;" (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

*Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003) (quoting *Northgate Apartments, L.P. v. City of N. Kansas City*, 45 S.W.3d 475, 479 (Mo. App. W.D. 2001)). Plaintiff Evans has failed to show that he has a "legally protectable interest." He and the rest of the general public had a legal right to a fifteen-day public comment period. The thirty-day comment period was not legally required and conferred no rights to Plaintiff Evans to bring a claim for declaratory judgment. Further, we disagree that he will suffer "irreparable harm" should this

Court not grant a permanent injunction. He offers no reason why he could not and did not submit his comments during the fifteen-day time period legally recognized and provided under section 116.334. In addition, Plaintiff Evans's comments merely suggest alternative language that he believed to be more fair and sufficient. The Secretary of State was not required to take these comments into account prior to drafting the Summary Statements nor accept his alternative statements. Plaintiff Evans fails to show that he was prejudiced or suffered a truly irreparable harm.

■ The language of section 116.334.1 is clear and unambiguous. It calls for the Secretary of State to make sample petitions available on its website, accept public comments regarding initiative petitions for fifteen days, make those comments available upon request, and submit the summary statements to the attorney general within twenty-three days. Although additional requirements regarding the time frame for publication and public comment may be preferable, we will not read into the statute additional requirements that are not present and are not necessary for the statute to have effect. "[T]he legislative branch of the government has determined the policy of the state.... Our function is to interpret the law; it is not to disregard the law as written by the General Assembly." *Boland v. Saint Luke's Health Sys.*, 471 S.W.3d 703, 713 (Mo. banc 2015). We find that the circuit court did not err in denying Plaintiff Evans's request for injunctive relief based upon his belief that the Secretary of State failed to comply with section 116.334.1.

**B. Declaratory and Injunctive Relief**

Additionally, in Point Relied On II, Plaintiff Evans raises a challenge to the circuit court's refusal to grant his request for declaratory and injunctive relief. Spe-

cifically, he alleges that the court erred in finding that the Secretary of State could not be compelled under section 536.150 to hold the public comment period open for more than fifteen days. Plaintiff Evans's arguments, however, are all premised on a finding that the Secretary of State violated section 116.334 in drafting the Summary Statements prior to the expiration of the fifteen-day public comment period or for otherwise failing to comply with its press release stating public comments would be open for thirty days. As fully discussed above, we find that the Secretary of State was not in violation of any of its statutory duties or requirements regarding the public comment period. Thus, there is nothing upon which to compel further action.

We find that the circuit court did not err in denying Counts I and II of Plaintiff Evans's Lawsuit. Plaintiff Evans's Points One and Two on Appeal are denied.

## II. Summary Statements

The majority of the claims in this appeal surround the circuit court's finding that the Summary Statements, as drafted by the Secretary of State, were not fair and sufficient and the trial court's decision to certify its own Amended Ballot Summaries. There are two findings of the circuit court that are at issue: (1) that the Summary Statements may have been fair and sufficient at the time they were drafted and (2) that the Summary Statements were unfair and insufficient at the time they were reviewed by the circuit court. The genesis of the circuit court's findings was that SB19, enacted after the Secretary's Summary Statements were written, necessitated amendment to the Summary Statements by the court. As a preliminary matter, we are asked to decide whether the court properly considered the passage

of SB19 in reviewing the fairness and sufficiency of the Summary Statements.[9]

## A. Senate Bill 19

■ The circuit court found that the passage of SB19 rendered the Summary Statements unfair or insufficient and, thus, the circuit court drafted the Amended Summary Statements. We must decide first whether the court erred in so doing to determine which set of statements this Court should review.

"[T]he process for reviewing initiative measures is found in the statutes and the state constitution." *United Gamefowl Breeders Ass'n of Mo. v. Nixon*, 19 S.W.3d 137, 139 (Mo. banc 2000). Article III, section 49 of the Missouri Constitution reserves to the people the power to propose amendments to the Constitution by initiative petition. The procedures for such initiative petitions are set out in Article III, section 50. The legislature has further established the procedures for such initiative petitions in chapter 116 of the revised statutes. The Secretary of State is charged with drafting summaries of each proposed ballot initiative, and the judiciary is charged with reviewing those summaries. Sections 116.334 and 116.190. Under section 116.190.4, "the court shall consider the petition, hear arguments, and in its decision certify the summary statement of the official ballot title to the secretary of state."

Plaintiffs and the Secretary of State argue that the proper point at which to determine the sufficiency of the Summary Statements is at the point of review by the circuit court. They contend that the circuit court should be able to review and incorporate all information available, even if that information was unknowable by the Secretary of State when he drafted his sum-

---

**9.** This question is also the subject of Louis' cross-appeal Point Relied On II.

mary. We need not resolve this question, however, as we find that SB19, whether passed before or after the Summary Statements were drafted, was not required to be referenced in the Summary Statements to render them fair and sufficient.

The initiative process is "a powerful tool of direct democracy." *Brown*, 370 S.W.3d at 673. "Nothing in our constitution so closely models participatory democracy in its pure form. Through the initiative process, those who have no access to or influence with elected representatives may take their cause directly to the people." *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827.

■■■ Generally, there are three sources of information for voters to consider in making a decision on a proposed ballot initiative. First is, of course, the full language of the initiative petition itself. The initiative petition is publicly available and published for review. *See* Section 116.260. The ballot title also contains a brief summary statement of the proposed initiative petition and a fiscal note summary assessing the measure's financial impact. *See* Sections 116.334 and 116.175. The summary materials provided in the ballot title are intended to provide voters with enough information that they are made aware of the subject and purpose of the initiative and allow a voter to make an informed decision as to whether to investigate the initiative further. *See Protect Consumers' Access to Quality Home Care Coal., LLC v. Kander*, 488 S.W.3d 665, 671 (Mo. App. W.D. 2015). "It is incumbent upon the Secretary in the initiative process to promote an informed decision of the probable effect of the proposed amendment." *Cures Without Cloning*, 259 S.W.3d at 82. The summary statement should include the "consequences of the initiative." *Brown*, 370 S.W.3d at 654. "Sometimes it is necessary for the secretary of state's summary

statement to provide a context reference that will enable voters to understand the effect of the proposed change." *Id.*

■■■ Missouri has never before been faced with how to address a situation where the legislature enacts a statute addressing the same subject matter after the Secretary of State has drafted the summary statement but before the courts have reviewed the summary statement. While we agree with the statement in *Brown* that "[s]ometimes it is necessary for . . . the summary statement to provide a context reference" for the initiative petition, we do not find that failure to do so, where the consequences are potentially ever changing due to the political landscape, will always render the summary insufficient. *See Brown*, 370 S.W.3d at 654. We find that the effect that the Initiative Petitions may eventually have on the provisions of SB19 does not require the court to step in and redraft the summaries in order for them to be fair and sufficient. It is commonly understood that constitutional amendments will supersede statutes that are in contravention with the amended constitutional provision. *Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 327 (Mo. banc 2015) (holding that a statute is unconstitutional if it clearly contravenes a constitutional provision); *State v. Kinder*, 89 S.W.3d 454, 459 (Mo. banc 2002) (if a statute conflicts with a constitutional provision the courts must hold the statute invalid). Yet, Missouri courts have never held that a summary statement prepared by the secretary of state must explain the initiative's potential effect on existing or future statutes to be fair and sufficient.

■■■ In this case, SB19 does make changes to Missouri's laws that affect the collective bargaining rights of employers and workers. The Initiative Petitions, by way of constitutional amendments, may well override some of the provisions of

SB19. But, it is unnecessary for the summaries to include information regarding SB19 for voters to understand generally the impact of the Initiative Petitions. Although including additional information regarding the passage of SB19 would certainly give additional context and information to voters, "[a]ll that is required is that the language fairly summarizes the proposal in a way that is impartial and does not deceive or mislead voters." *Mo. Mun. League v. Carnahan*, 364 S.W.3d 548, 553 (Mo. App. W.D. 2011). The Summary Statements clearly state that the Missouri Constitution will be amended to affect collective bargaining rights. It requires no specialized understanding of the law to know that these constitutional amendments will trump existing statutes where there is a conflict between the two. The courts should not insert themselves unnecessarily into the summary drafting process where it is not necessary for the protection of voters.

We need not broadly decide whether the judiciary is entitled to review a summary statement using information not available to the Secretary of State at the time the summary statement was written. In this case, whether SB19 had been passed before or after the Summary Statements were prepared, the effect of the Initiative Petitions on contravening statutes is self-evident. Thus, we find that the circuit court erred in finding that it needed to redraft the Summary Statements based on the passage of SB19. The circuit court's decision to amend the Summary Statements is reversed. We will, therefore, proceed by reviewing the Summary State-

ments drafted by the Secretary of State, rather than the Amended Summary Statements drafted by the circuit court, to determine if they are fair and sufficient.[10]

### B. Fairness and Sufficiency of Summary Statements (Hill Plaintiffs)

As previously stated, the summary materials provided in the ballot title are intended to provide voters with enough information that they are made aware of the subject and purpose of the initiative and allow the voters to make an informed decision as to whether to investigate the initiative further. *See Protect Consumers' Access to Quality Home Care Coal., LLC v. Kander*, 488 S.W.3d 665, 671 (Mo. App. W.D. 2015). "The ballot title is sufficient if it 'makes the subject evident with sufficient clearness to give notice of the purpose to those interested or affected by the proposal.'" *Protect Consumers' Access to Quality Home Care Coal., LLC*, 488 S.W.3d at 671 (quoting *Overfelt v. McCaskill*, 81 S.W.3d 732, 738 (Mo. App. W.D. 2002) (superseded in part by statutes)). The party challenging the language of the summary statement bears the burden to show that the language is insufficient or unfair. *Archey v. Carnahan*, 373 S.W.3d 528, 532 (Mo. App. W.D. 2012) (internal quotation omitted). "Insufficient means 'inadequate; especially lacking adequate power, capacity, or competence.' The word 'unfair' means to be 'marked by injustice, partiality, or deception.' Thus, the words insufficient and unfair ... means to inadequately and with bias, prejudice, deception and/or favoritism state the [consequence of

---

10. Louis's Point Relied On III contends that the Amended Summary Statements drafted by the circuit court for the Initiative Petitions were prejudicial and contained partisan language. Because we find that the circuit court erred in redrafting the Summary Statements based on the subsequent passage of SB19, we need not review these Amended Summaries for this alleged error. Louis's Point Relied On III is otherwise mooted by this opinion, and we need not address its claims. We make no finding as to the fairness or sufficiency of the Amended Summary Statements as drafted by the circuit court.

the initiative]." *State ex rel. Humane Soc'y*, 317 S.W.3d at 673 (quoting *Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo. App. W.D. 1994)).

"[E]ven if the language proposed by [Plaintiffs] is more specific, and even if that level of specificity might be preferable, whether the summary statement prepared by the Secretary of State is the best language for describing the referendum is not the test." *Archey*, 373 S.W.3d at 533. A summary may be vague and fail to fully advise voters of the specific provisions so long as it is "accurate as to the purpose of the initiative." *Boeving v. Kander*, 493 S.W.3d 865, 878 (Mo. App. W.D. 2016). "The critical test is 'whether the language fairly and impartially summarizes the purposes of the measure so that voters will not be deceived or misled.'" *Cures Without Cloning*, 259 S.W.3d at 81 (quoting *Bergman v. Mills*, 988 S.W.2d 84, 92 (Mo. App. W.D. 1999)).

> Requiring fairness and sufficiency of an initiative's summary statement ... reflects that there are "procedural safeguards [in the initiative process that] are designed either, (1) to promote an informed understanding by the people of the probable effects of the proposed amendment, or (2) to prevent a self-serving faction from imposing its will upon the people without their full realization of the effects of the amendment."

*Brown*, 370 S.W.3d at 654 (quoting *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 11-12 (Mo. banc 1981)).

The Hill Plaintiffs claim that the Summary Statements were insufficient or unfair as written in a number of respects. The Hill Plaintiffs argue the Summary Statements: (1) are over inclusive and

that they fail to identify the "collectively bargained agreements" to which they are directed; (2) improperly reference "employees" as opposed to "unions;" and (3) contain certain other deficiencies directed towards individual Summary Statements for the various initiatives. Conversely, Louis's Point Relied On I argues that the Summary Statements were fair and sufficient as originally drafted by the Secretary of State.[11]

For clarity, we address each of the Hill Plaintiffs' challenges as they relate to the unique language of the five sets of Initiative Petitions. However, because there is substantial repetition of the arguments, we often refer back to prior explanations of our findings.

Article I, section 29 of the Missouri Constitution currently reads:

> That employees shall have the right to organize and to bargain collectively through representation of their own choosing.

All ten Initiative Petitions seek to add or amend this language.

### Summary Statements 2018-092 and 2018-096

Initiative Petitions 2018-092 and 2018-096 propose that the Missouri Constitution be amended so that Article I, section 29 reads (new language is bold and underlined):

> That employees shall have the right to organize and to bargain collectively through representatives of their own choosing. **No existing or future law or ordinance of the state or its political subdivision shall impair, restrict or limit the ability of employees to negotiate, enter into and enforce any col-**

11. As the Plaintiffs' claims of error as to the fairness and sufficiency of the Summary Statements overlap with Louis' cross-appeal Point Relied On II, we will discuss all claims related to the fairness and sufficiency of the Summary Statements collectively.

**lectively bargained agreement with an employer that provides financial support for the representational services their collective bargaining representative preforms.**

The Secretary of State's Summary Statement reads:

Shall the Missouri Constitution be amended to prohibit impairing, restricting or limiting the ability of employees to negotiate, enter into and enforce certain collectively bargained agreements with an employer?

 The Plaintiffs argued to the circuit court that this Summary Statement is unfair and insufficient for at least nine reasons. On appeal, the Plaintiffs raise and argue three challenges [12] but state that for the arguments given "and all the reasons cited in ¶¶ of the Complaints" the Summary Statements are insufficient and misleading. "[T]he use of incorporation by reference is not sufficient in the argument section" of a Brief. *Frazier v. City of Kansas*, 467 S.W.3d 327, 346 (Mo. App. W.D. 2015) (citing *Von Ruecker v. Holiday Inns, Inc.*, 775 S.W.2d 295, 299 (Mo. App. E.D. 1989) (a point is deemed abandoned where argument is half a page in length, cites no authority, and incorporates by reference another part of the record)). We note that the arguments that the Hill Plaintiffs direct at the specific language of the Summary Statement drafted for each individual Initiative Petition cites to no case law or other authority and instead makes general arguments and then incorporates the arguments contained in the Lawsuits' Petition

by reference. "If a party does not support contentions with relevant authority or argument beyond conclusory statements, the point is deemed abandoned." *Gardner v. Bank of America, N.A.*, 466 S.W.3d 642, 649 (Mo. App. E.D. 2015). We choose *ex gratia* to address the Hill Plaintiffs' arguments to the extent they are raised in the Point Relied On rather than deeming them abandoned. However, those arguments raised in the Lawsuits' Petition or elsewhere and merely incorporated by reference into the Hill Plaintiffs' Appellants' Brief are deemed abandoned and will not be addressed by this Court.

 First, the Hill Plaintiffs contend that this Summary Statement is over-inclusive in that it fails to identify the "collectively bargained agreements" to which the Initiative Petitions are directed. The Hill Plaintiffs contend that the phrase "collectively bargained agreements" identifies a broad range of topics and subjects and without identifying what the "certain" agreements are, the true nature of the Initiative Petitions are obscured. Specially, they contend that the Summary Statements for 2018-092 and 2018-097 specifically prohibit laws that restrict agreements requiring "financial support for representational services" and the failure to specifically identify these specific types of agreements in the Summary Statements renders them insufficient.

The Hill Plaintiffs argue that failure to notify voters that "certain agreements" means agreements requiring financial sup-

**12.** The circuit court's Hill Judgment and Evans Judgment found that the Summary Statements were unfair or insufficient because of the subsequent passage of SB19. The court found that "at the time they were drafted, the summary statements for the [Initiative Petitions] may have satisfied the minimal requirements of Chapter 116." The court redrafted the summaries to incorporate the context of

SB19. Because we found above that the court erred in incorporating the effects of SB19, and our court reviews the circuit court's Hill Judgment and Evans Judgment *de novo*, we review the Summary Statements as drafted by the Secretary of State to determine whether they comply with the requirements of Chapter 116.

port is a substantial contextual reference. Although we agree that the inclusion of reference to Financial Support Agreements[13] would lead to greater specificity in the Summary Statements, we do not believe that the Summary Statements are unfair or insufficient without such a reference. In *Brown*, the Missouri Supreme Court examined a tobacco tax initiative in which the summary statement referred to "certain tobacco product manufacturers." 370 S.W.3d at 655. The plaintiffs in *Brown* claimed that use of the term "certain" was unfair because the particular types of tobacco product manufacturers were clearly established in the initiative petition. *Id.* at 656. The Court noted that there are limitations within a 100-word limit imposed on a summary statement by section 116.334. *Id.* "The summary statement need not set out the details of the proposal to be fair and sufficient." *Id.* (internal quotations omitted). "The test is not whether increased specificity and accuracy would be preferable or provide the best summary." *Id.* Instead, "[t]he important test is whether the language fairly and impartially summarizes the purpose of the initiative." *Id.* (quoting *Missourians Against Human Cloning v. Carnahan*, 190 S.W.3d 451, 457 (Mo. App. W.D. 2006) (internal quotations omitted)). Ultimately, the Court found that, under the circumstances, the general descriptor of "certain" manufacturers was sufficient. *Id.* at 656-57.

It is tempting in this case to require narrower language because it is possible to do so. However, applying such a standard cannot be reconciled with previous cases in which we have said that we will not find a summary statement insufficient or unfair simply because, in the opinion of the court, it could have been drafted better. *See Mis-*

*sourians Against Human Cloning*, 190 S.W.3d at 457; *Overfelt*, 81 S.W.3d at 738. In other words, though the summary at issue here could have been far more precise and still met the 100-word limit imposed by section 116,334.1, it is simply an unworkable legal standard to hold that, while broad language is generally acceptable in summary statements, there exists a subset of cases in which such a summary statement may be deemed insufficient because a better summary could have been drafted within the word limitations. The legal standard cannot change based upon the number or complexity of the provisions contained in the initiative.

The use of "certain agreements," while more generalized than identifying a more specific class of agreements, is not unfair or insufficient in this case. *See also Boeving*, 493 S.W.3d at 878 (allowing reference to "certain cigarettes"). Just as there are a wide variety of cigarettes and cigarette manufacturers, there are a wide variety of collective bargaining agreements which could call for the financial support for representational services. It was not *necessary* for the Secretary of State to seek to identify all of the agreements to which Initiative Petitions 2018-092 and 2018-096 could apply, even if this Court may have preferred such specificity to be included.

The result is the same even if we view the Summary Statements from the viewpoint that the problem is not that the statements were overly broad, but rather that the Secretary of State did not need to broaden the terms of the initiative to be inclusive of all if its elements. The Secretary of State could have merely stated the specific type of agreement. But, for the

---

**13.** In this case, the phrase financial support agreements is used to refer to agreements under which all employees are required to pay their pro rata share for the cost of retain-

ing a person who will represent the union employees in contract and labor negotiations with the employer ("Financial Support Agreements").

same reasons as stated above, this is not our test. Although the initiative only governs one type of agreement, that type of agreement may take many different forms and be present in a multitude of ways throughout any given collective bargaining agreement. Thus, we find that the Secretary of State in its discretion may more broadly describe an initiative to give all possible affected voters notice, we do not hold that the Secretary of State wrote an unfair or insufficient summary simply because it chose to use the broad language of "collective bargaining agreements."

This case is distinguishable from this Court's holding in *Protect Consumers' Access to Quality Home Care Coalition, LLC v. Kander*, 488 S.W.3d 665 (Mo. App. W.D. 2015). In *Protect Consumers' Access*, the plaintiffs argued that the summary statement was insufficient or unfair because it failed to inform the voters that the subject of the measure was in-home healthcare services for individuals in the MO Health-Net Program. *Id.* at 671. Instead, the summary statement merely referenced "in-home services providers and vendors." *Id.* at 670. This Court found the failure to reference the MO HealthNet Program rendered the summary unfair and insufficient because it failed to put voters on notice as to who would be affected by the initiative. *Id.* 671-72. Greater specificity was needed in *Protect Consumers' Access* because the summary as written gave voters no information to put those affected on notice. Nearly every voter may have incorrectly believed he or she would be affected because they had someone come into their home to provide a service—from a plumber to a piano tuner. Instead, the initiative actually affected a limited segment of the population. The Summary Statement in this case already limits the affected population. Voters are made aware that it affects "certain collective bargaining agreements" and voters who are affected by or

have a particular interest in collective bargaining agreements are put on notice that they should investigate the initiative further. This general descriptor may be very broad and include collective bargaining agreements to which the initiative does not apply and more specificity may have been preferred. Yet, the voters affected—those that have an interest in collective bargaining agreements—are put on notice that they should read the specific details of the initiative before casting their vote.

"The [s]ummary [s]tatement is intended to give notice to voters of the subject of the initiative so that he or she may make an informed choice on whether to investigate the matter further." *Protect Consumers' Access*, 488 S.W.3d at 671. It is incumbent on a voter who believes he or she may be affected by or have an interest in the initiative based on the summary to then read the entire initiative—publicly available to all voters—to determine the specific terms of a measure. This Court agrees with the Plaintiffs that the Secretary of State could have written better Summary Statements containing more detail given the additional words available under the required 100 word limit. We cannot, however, rewrite summaries that are fair and sufficient merely because they are broadly written so long as they are not misleading or deceitful.

The Hill Plaintiffs also challenge the Summary Statements for 2018-092 and 2018-096 as unfair or insufficient because they fail to identify to whom or what they apply. The statements reference "employees," but the Hill Plaintiffs note that it is not the "employees" who "negotiate, enter into and enforce" collective bargaining agreements; it is labor unions that take such actions. While this may be the case, the members of the labor unions are comprised of a set of the employees and, more

importantly, the summary statements mirror the language of the initiatives which use the term "employees." *See, generally State ex rel. Kander v. Green*, 462 S.W.3d 844, 849 (Mo. App. W.D. 2015) (noting "that a court's review of a section 116.190 challenge involves a review of the language of the ballot summary and a comparison of the summary's language to the provisions of the [i]nitiative; it does not require any foray into the state of mind of the summary's drafters."); *State ex rel. Humane Soc'y of Mo.*, 317 S.W.3d at 673 (denying writ seeking outside evidence of public attitudes toward the phrase "puppy mill" where language was taken directly from initiative).

### Summary Statements 2018-093 and 2018-097

Initiative Petitions 2018-093 and 2018-097 propose that the Missouri Constitution be amended so that Article I, section 29 reads (new language is underlined and bold):

> That employees shall have the right to organize and to bargain collectively through representatives of their own choosing. **No existing or future law or ordinance of the state or its political subdivisions shall impair, restrict or limit the negotiation and enforcement of any collectively bargained agreement with an employer respecting financial support by employees of their collective bargaining representative according to the terms of that agreement.**

The Secretary of State's Summary Statement reads:

> Shall the Missouri Constitution be amended to prohibit impairing, restricting or limiting the negotiation and enforcement of certain collectively bargained agreements with an employer?

Similar to the arguments presented on Initiative Petitions 2018-092 and 2018-096, the Hill Plaintiffs allege that the Summary Statements for Initiative Petitions 2018-093 and 2018-097 fail to identify the "certain" collective bargaining agreements to which they apply including specifically mentioning certain types of agreements such as "forced-unionism" and "union security." As with this Court's analysis above, a summary statement may use the term "certain" to describe a class of items at issue in an initiative petition and be fair and sufficient even if more specificity would be preferable. The fact that the Hill Plaintiffs list a variety of types of agreements as examples of those that may be at issue under the terms of the Initiative Petitions illustrates the need for the Secretary of State to have used a more generalized phrase rather than describe each type of agreement in detail.

Further, terms such as "forced-unionism" and "union security", as suggested by the Hill Plaintiffs, are partial terms that carry their own baggage either positive or negative within some members of the citizenry. *See Green*, 462 S.W.3d at 849-50 (discussing that the Secretary of State should strive to use neutral terms that avoid being argumentative). The Secretary of State must attempt to draft neutral language that is fair and impartial and avoid phrases like the ones suggested by the Hill Plaintiffs, which describe the Initiative Petition using terms that would immediately prejudice a voter for or against the initiative. *See Shoemyer v. Kander*, 464 S.W.3d 171, 172 (Mo. banc 2015).

### Summary Statements 2018-094 and 2018-098

Initiative Petitions 2018-094 and 2018-098 propose that the Missouri Constitution be amended so that Article I, section 29

reads (new language is underlined and bold):

> That employees **and employers** shall have the right to organize and to bargain collectively through representatives of their own choosing. **No existing or future law or ordinance of the state or its political subdivisions shall impair, restrict or limit the negotiation and enforcement of any collectively bargained agreement with an employer respecting financial support by employees of their collective bargaining representative according to the terms of that agreement.**

The Secretary of State's Summary Statement reads:

> Shall the Missouri Constitution be amended to:
> - Allow employers to have the right to organize and to bargain collectively through representatives chosen by them and their employees; and
> - Prohibit impairing, restricting or limiting the negotiation and enforcement of certain collectively bargained agreements with an employer?

As already discussed fully above, the Hill Plaintiffs allege that the Summary Statements drafted for Initiative Petitions 2018-094 and 2018-098 are unfair and insufficient because they do not adequately identify the agreements to which they apply, including permitted actions such as "forced-unionism" and "union security." For the reasons stated above, we find that the Summary Statements are not unfair or insufficient.

Additionally, the Hill Plaintiffs allege that the above Summary Statements were insufficient because of what the Hill Plaintiffs describe as "an unintelligible proposed" amendment to the Missouri Constitution, which describes a bargaining process "unknown to American labor law" and "the truly radical notion that the proposed [initiatives] purport[ ] to vest in employees the right to select the employer's bargaining representative." [14] These are challenges to the effect of the Initiative Petitions 2018-094 and 2018-098 themselves, not to the Summary Statements. As the case before us constitutes a challenge to the Summary Statements as drafted and not a challenge to the underlying legality of the Initiative Petitions, this is not a proper argument before this Court at this time. This Court's role is to review the language of summary statements, and we "do not sit in judgment on the wisdom or folly of proposals." *Cures Without Cloning*, 259 S.W.3d at 81 (quoting *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827). To opine on the validity or effect of an initiative petition prior to its passage by the voters would require us to give an advisory opinion, which we cannot do. *Knight v. Carnahan*, 282 S.W.3d 9, 21 (Mo. App. W.D. 2009).

### Summary Statements 2018-095 and 2018-099

Initiative Petitions 2018-095 and 2018-099 propose that the Missouri Constitution

---

**14.** Our review is to determine whether the Summary Statements fairly and sufficiently summarize the Initiative Petitions, not to first attempt to determine the true intent of what may be a poorly drafted initiative and then determine whether the Secretary of State fairly and sufficiently summarized *that* purpose. To do so would require the court to issue an advisory opinion as to the effect of the Initiative Petition if it were to be adopted. *See Brown*, 370 S.W.3d 637, 645 (when reviewing the sufficiency of a ballot summary, courts will not issue an advisory opinion as to whether the initiative proposal itself would violate a superseding law or the United States Constitution).

be amended so that Article I, section 29 reads (new language is underlined and bold):

> That employees **and employers** shall have the right to organize and to bargain collectively through representatives of their own choosing. **That an employee accepting employment with an employer in a position represented by a representative of employee's choosing may be required to contribute that employee's pro-rata share of representational costs if the employer and employees' chosen representative have so agreed.**

The Secretary of State's Summary Statement reads:

> Shall the Missouri Constitution be amended to:
>
> - Allow employers to have the right to organize and to bargain collectively through representatives chosen by them and their employees; and
>
> - Allow an employer and employees' chosen representatives to require that employees in a position represented by a representative of the employees' choosing to contribute a pro-rata share of representational costs?

In the circuit court, the Hill Plaintiffs alleged that the Summary Statement was unfair and insufficient for at least nine reasons. On appeal, the Hill Plaintiffs alleges that the Summary Statement was unfair and insufficient because it "elaborately euphemize[s] ... to identify the types of agreements authorized under the proposed Amendment." The Hill Plaintiffs argue that where the Summary Statements refer to the requirement that employees contribute to their "pro rata share of representational costs," the summary should state that the employee must "join or pay union dues as a condition of contin-

ued employment." While the Hill Plaintiffs' proposed language also summarizes the terms of the Initiative Petition, we do not believe that the language chosen by the Secretary of State is unfair or insufficient. We cannot and will not rewrite language simply because there may be a better or more succinct way of summarizing the initiative petition. *See Asher v. Carnahan*, 268 S.W.3d 427, 431 (Mo. App. W.D. 2008) ("[i]f charged with the task of preparing the summary statement for a ballot initiative, ten different writers would produce ten different versions"); *Missourians Against Human Cloning*, 190 S.W.3d at 457 (It is not the job of the courts to write a "better" summary). "[T]he test is not whether the ballot title, as written, was the best language, but whether the summary statement fairly and impartially summarizes the purpose of the initiative." *Dotson v. Kander*, 464 S.W.3d 190, 196 (Mo. banc 2015). Although the Hill Plaintiffs may craft language they believe is better than that written by the Secretary of State, we find they are not convincing that the language as originally drafted was unfair or insufficient thus necessitating such a redrafting.

Further, the Hill Plaintiffs assert that the same challenges to the ballot initiative that were outlined above with reference to initiatives 2018-094 and 2018-098 are applicable to initiatives 2018-095 and 2018-099. As noted above, Plaintiffs' arguments are directed at the effect of the actual language of the proposed initiative and not with the fairness or sufficiency of the Summary Statements, which is the proper focus of this appeal. As such, we decline to address the Hill Plaintiffs' additional arguments.

### Summary Statements 2018-101 and 2018-102

Initiative Petitions 2018-101 and 2018-102 propose that the Missouri Constitution

be amended so that Article I, section 29 reads (new language is underlined and bold):

> That employees shall have the right to organize and to bargain collectively through representatives of their own choosing. **No law or ordinance shall restrict or impair an agreement which requires employees to support their chosen collective bargaining representative. The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the State of Missouri shall be obligated to uphold these rights and under no circumstances decline to protect against their infringement.**

The Secretary of State's Summary Statement reads:

> Shall the Missouri Constitution be amended to prohibit restricting or impairing an agreement that requires employees to support their chosen collective bargaining representative?

In the circuit court, the Hill Plaintiffs alleged this Summary Statement was unfair and insufficient for at least five reasons. On appeal, the Hill Plaintiffs claim that it is unfair and insufficient because it describes forced union membership "in complicated and euphemistic" terms. As indicated above, we will address the arguments that are properly raised before this Court and will not address the additional arguments made below but now abandoned.

Plaintiffs argue that the Summary Statement should read:

> Shall the Missouri Constitution be amended to protect the power of labor unions to negotiate and enforce agreements requiring, as a condition of continued employment, union membership or payment of union dues?

As we noted above, the question this Court is to consider is not whether there is a better way to draft the Summary Statement but rather if the Summary Statement, as written by the Secretary of State, is unfair or insufficient.

The Hill Plaintiffs argue that the use of the term "employees" is too broad and it should more narrowly refer to employees choosing to belong to a labor union. As noted above, while this may be more precise, we do not believe that use of the more generic term "employees" misleads or otherwise misinforms the public, and the language is taken directly from the Initiative Petition.

■ The Hill Plaintiffs also claim that the summary is insufficient because it fails to identify the nature of the "support" which might be compelled. The Hill Plaintiffs argue that "[i]t would not be difficult to imagine that such compelled" support may, in fact, conflict with the guarantees of the National Labor Relations Act, which affords employees certain protections from labor organizations. *See* 29 U.S.C. § 157. This argument constitutes a challenge that may be brought if the petition is adopted by the people regarding the Supremacy Clause and its effect on the National Labor Relations Act; it is not a challenge to the Summary Statements. Article VI, Clause 2. We cannot provide an advisory opinion as to the legality or effects of the initiative petition should it ultimately be placed on the ballot and adopted by the voters. *Knight*, 282 S.W.3d at 21.

The Hill Plaintiffs further argue, "perhaps most importantly" that the Summary Statements for Initiative Petitions 2018-101 and 2018-102 make no mention of the heightened level of scrutiny to which review of laws regarding these agreements would be subject. First, we note that although Plaintiffs highlight the level of scrutiny as an important factor, they too

failed to include it in the language of their proposed summary. Further, discussion of the application of strict scrutiny review is discussed *infra* at II.C.5.

## C. Fairness and Sufficiency of Summary Statements (Plaintiff Evans)

In addition to the challenges raised by the Hill Plaintiffs to the Summary Statements, Plaintiff Evans raises five additional challenges. Plaintiff Evans argues that the Summary Statements were unfair or insufficient because they: (1) improperly obscured the purpose of the Initiative Petitions, including who is really interested or affected by the proposals; (2) failed to make clear what is prohibited by the Initiative Petitions and for whom; (3) misled voters and petition signers by saying that they will "allow" something already allowed; (4) contained grammatical errors and are unclear; and (5) failed to apprise voters of substantial changes in the law regarding the application of strict scrutiny court review. We will address each claim in turn.

### 1. Statements obscured purpose of the Initiative Petitions

Plaintiff Evans contends that the Summary Statements are insufficient and unfair because they improperly obscure the purpose of the Initiative Petitions because the use of the phrase "certain collectively bargained agreements" obscures the purpose of the Initiative Petitions.

Plaintiff Evans analogizes this case to that of *Seay v. Jones*, 439 S.W.3d 881 (Mo. App. W.D. 2014). In *Seay*, the initiative petition purportedly sought to allow early voting but only allowed such voting to occur if the Missouri General Assembly allocated funds to cover the cost thereof. *Id.* at 884-85. The summary statement made no mention of the caveat that the

General Assembly was required to allocate funds and, if no funds were allocated, local election authorities would actually be barred from holding voting in advance of Election Day. *Id.* This court found that the "significant contingency" was a central feature of the initiative to which voters needed to be informed. *Id.* at 891.

Although we agree that the inclusion of reference to Financial Support Agreements would lead to greater specificity in the Summary Statements, we do not believe that the Statements are unfair or insufficient without such reference. In *Brown*, the Missouri Supreme Court examined a tobacco tax initiative in which the summary statement referred to "certain tobacco product manufacturers." 370 S.W.3d at 655. The plaintiffs in *Brown* claimed that use of the term "certain" was unfair because the particular types of tobacco manufacturers effected were clearly established and easily defined. *Id.* at 656. The Court noted that there are limitations created by the 100-word limit imposed on summary statement by section 116.334. *Id.* "The summary statement need not set out the details of the proposal to be fair and sufficient." *Id.* (internal quotations omitted). "The test is not whether increased specificity and accuracy would be preferable or provide the best summary." *Id.* Instead, "[t]he important test is whether the language fairly and impartially summarizes the purpose of the initiative." *Id.* (quoting *Missourians Against Human Cloning*, 190 S.W.3d at 457 (internal quotations omitted)). Ultimately, the Court found that, under the circumstances, the general descriptor of "certain" manufacturers was sufficient.

██ We similarly agree that the use of "certain agreements," while more generalized than identifying a more specific class of agreements, is not unfair or insufficient as used in this context. *See also Boeving,*

493 S.W.3d at 871 (allowing reference to "certain cigarettes"). Just as there are a wide variety of collective bargaining agreements, there are a wide variety of collective bargaining agreements which could call for financial support for representational services.

Within the confines of the word limit, the ballot title is not required to set out the details of the proposal or resolve every peripheral question related thereto. While there may be aspects of the ballot initiative or consequences resulting therefrom that Appellants would have liked to have seen included in the summary statement, their exclusion does not render the summary statement either insufficient or unfair. The test is not whether increased specificity and accuracy would be preferable or provide the best summary; rather, the important test is whether the language fairly and impartially summarizes the purpose of the initiative.

*Archey*, 373 S.W.3d at 533-34 (citations and internal quotations omitted). While the Secretary of State could have drafted a summary that provided more specificity within the 100-word limit, our test is not whether a better summary could have been drafted. Under the test applied by this Court, it was not necessary for the Secretary of State to seek to identify all the agreements to which Initiative Petitions could apply so long as the language is not deceitful or misleading. *See also* discussion *supra* II.B.

### 2. Statements failed to identify those affected

■ Plaintiff Evans also contends that the Summary Statements were unfair or insufficient because they failed to provide notice of "*who* the initiative is acting upon (the state or private actors) or *what* types of action (legislative or individual) are being prohibited." Plaintiff Evans argues

that because of this lack of detail, the Summary Statements lack sufficient clarity to give notice of the purpose of the proposals. *See Protect Consumers' Access*, 488 S.W.3d at 671. He argues that voters will be misled to believe that corporations and private actors will be prohibited from taking action because the statements are unqualified. We disagree.

The Summary Statements make clear that the Missouri Constitution is being amended so that no "law or ordinance" will restrict the enumerated rights. We do not believe that the voters will be confused and believe that "everyone is prohibited from doing anything." As repeatedly noted, the test is not whether the Secretary of State could have drafted a *better* summary statement, the test is whether the summary statement *as drafted* is fair and sufficient. "The summary statement should be fair and impartial so that voters will not be deceived or mislead, but it is not necessary for the summary statement to set out every detail of the proposal." *Dotson*, 464 S.W.3d at 196-96; *Boeving*, 493 S.W.3d at 876. As such, we find that failing to explain rather obvious details—such as, that by discussing "laws" the initiative is referring to government action—is reasonable under the circumstances. These omissions in this case do not make the Summary Statements unfair or insufficient.

### 3. Statements are misleading

■ Plaintiff Evans next contends that the Summary Statements for Initiative Petitions 2018-94, 2018-95, 2018-98, and 2018-99 are unfair and misleading because they appear to give employees the right to play a role in determining the employer's bargaining representative. We discussed a similar argument raised by the Hill Plaintiffs *supra* at II.B. The language of the Summary Statements mirrors the language used in the Initiative Petitions. To

the extent that Plaintiff Evans's argument is with the language of the Initiative Petition or its effect if adopted, it is not properly raised as a challenge to the Summary Statements. The Secretary of State merely recited to voters what the Initiative Petitions purport to do.

■ Additionally, Plaintiff Evans takes issue with the characterization that the Missouri Constitution was being amended to "allow" something that is not currently prohibited. While we agree there is currently no such prohibition within the Missouri Constitution, the Initiative Petitions do, in fact, "amend" the Missouri Constitution to specifically and unequivocally "allow" collective bargaining as a constitutional guarantee. We do not believe this is unfair or misleading in this context. *See, generally, Mo. Mun. League*, 364 S.W.3d 548 at 552 (discussing that the "mere fact that a proposal references something currently in the Constitution does not make it automatically unfair or prejudicial. . . .")

### 4. Statements are grammatically incorrect

■ Plaintiff Evans generally states that the Summary Statements for Initiative Petitions 2018-95 and 2018-99 are grammatically incorrect. He fails to state, however, how they are grammatically incorrect or why such an error leads to the conclusion that the Summary Statements fail to meet the requirements of section 116.190. We will not formulate Plaintiff Evans's argument for him and, thus, we will not address this claim, as to do so would remove us from our role as neutral arbiter and put us in the position of being an advocate for a party. *State ex rel. Jackson v. City of Joplin*, 300 S.W.3d 531, 534 (Mo. App. S.D. 2009) ("[I]t is not within the province of this Court to decide an argument that is merely asserted but not developed."); *Capital One Bank v. Hardin*,

178 S.W.3d 565, 572 n.3 (Mo. App. W.D. 2005).

■ Plaintiff Evans also notes that the Summary Statements for Initiative Petitions 2018-95 and 2018-99 are deceptive because they use the generic term "employee" to refer to "different employee groups." Although we certainly agree that the broad classification of employees may be subdivided into an almost unending list of sub-classifications, we do not believe that using the broader term in the Summary Statements renders them unfair or insufficient as used in this context.

The Summary Statements for Initiative Petitions 2018-95 and 2018-99 state that employees may be required to pay their pro rata share of the cost of representation. We disagree with Plaintiff Evans's characterization that the employees' chosen representative will only represent some employees while requiring pro rata payment by all employees. No use of sub-classifications of employees is necessary to make the Summary Statements fair and sufficient in this case.

### 5. Statements fail to reference strict scrutiny

■ Finally, Plaintiff Evans alleges that the Summary Statements for Initiative Petitions 2018-101 and 2018-102 are unfair or insufficient because they fail to note that the initiatives require strict scrutiny to be applied to challenges to employees' right to collectively bargain and the right to require financial support for a collective bargaining representative. Also, Plaintiff Evans challenges these Summary Statements because they fail to address the mandatory Financial Support Agreements.

We address the Financial Support Agreements first. Although, we agree that financial support is certainly one way by

which employees support their chosen collective bargaining representative, they are not the only types of agreements impacted. The Initiative Petitions do not specifically enumerate financial support agreements. We find that it is not incumbent on the Secretary of State to try to determine all the types of agreements that could be affected by the Initiative Petitions and to specifically list such agreements. The Summary Statements mirror the terms and language used by the Initiative Petitions, and we find that they were fair and sufficient in so doing.[15]

■ Plaintiff Evans also challenges the Summary Statements' failure to notify voters that it would require laws regarding collective bargaining agreements to be reviewed for strict scrutiny. The Missouri Supreme Court addressed a similar concern in *Dotson v. Kander*, 464 S.W.3d 190 (Mo. banc 2015). In *Dotson*, the initiative required the application of strict scrutiny to be applied to challenges to the right to bear arms. *Id.* at 197. The Court noted that strict scrutiny was already applied in these case regardless of the adoption of the initiative. *Id.* 197; 203-04 (Fischer, J., concurring).

■ Although the Court in *Dotson* did not hold that strict scrutiny as part of a ballot initiative must be disclosed for a summary to be fair and sufficient, it did suggest such may be necessary. All the specifics of an initiative petition need not be identified in the summary; however, for the summary to be fair and sufficient. *Overfelt*, 81 S.W.3d at 739. In *Coburn v. Mayer*, 368 S.W.3d 320 (Mo. App. W.D. 2012), this Court reviewed a sufficiency challenge to a summary statement that

failed to disclose a new right given to students to refrain from participating in school assignments that violated their religious beliefs. *Id.* at 326. This Court found that all details need not be included in the summary but noted that the summary statement at issue was "broad enough to cover [that] provision." *Id.*

Louis argues that a specific reference to strict scrutiny is not needed in this case because, like *Dotson*, strict scrutiny already applies to collective bargaining agreements. In *Kuehner v. Kander*, 442 S.W.3d 224, 230 (Mo. App. W.D. 2014), this Court noted in dicta that employees in Missouri enjoy a "fundamental right to collectively bargain." Louis asks us to couple this dicta to the general proposition that challenges to "fundamental rights" are subject to strict scrutiny. *See, e.g. Amick v. Dir. of Rev.*, 428 S.W.3d 638, 640 (Mo. banc 2014) ("If the challenged law ... curtails the exercise of a fundamental right, then strict scrutiny applies"). First, it is important to stress that the language in *Kuehner* is merely dicta. Missouri's only other recognition of collective bargaining as a "fundamental right" is found in a citation to the Corpus Juris Secundum from a 1957 Missouri Supreme Court case. *See Kerkemeyer v. Midkiff*, 299 S.W.2d 409, 414 (Mo. banc 1957) (quoting that "[t]he right of collective bargaining is a 'fundamental or natural right' ..."). Second, there is no published case in which a Missouri court has applied strict scrutiny to a challenge to collective bargaining or a collective bargaining agreement.

The question as to whether strict scrutiny already applies to challenges to collective bargaining was not addressed by the

---

**15.** We do not address, as it is not before the court, whether the use of terms in a summary statement which mirror the language of the initiative may be unfair or insufficient because the language of the initiative itself is likely to create prejudice for or against the measure, *See State ex rel. Humane Society of Missouri v. Beetem*, 317 S.W.3d 669, 674 (Mo. App. W.D. 2010).

circuit court and it has not been fully briefed on appeal. We find that the State of Missouri's law is uncertain and without opportunity for full briefing and argument, this Court does not decide whether strict scrutiny does or does not already apply to collective bargaining challenges in Missouri. Instead, we find that because it is not presently clear whether strict scrutiny applies—unlike *Dotson*—it is important for voters to be notified in the Summary Statement that the initiative expressly applies strict scrutiny to such challenges.

We find that the language drafted by the Secretary of State is not broad enough to encompass an express requirement that challenges to certain collective bargaining agreements be viewed with strict scrutiny. Nor do the word limitations of section 116.334 prevent such a disclosure in this case. We agree with Plaintiff Evans that the application of strict scrutiny to laws impacting collective bargaining agreements is an important and fundamental part of Initiative Petitions 2018-101 and 2018-102. The Summary Statements drafted by the Secretary of State are sufficiently under the 100-word minimum such that they could incorporate the change to the scrutiny applied to collective bargaining cases. We believe that for the summaries to be fair and sufficient they can and should disclose this potential change in scrutiny level. This may be done by amending the Summary Statement to state (new language underlined and bold):

> Shall the Missouri Constitution be amended to prohibit restricting or impairing an agreement that requires

employees to support their chosen collective bargaining representative **and apply a strict scrutiny review to any such restrictions or impairments**?

We agree with Plaintiff Evans's arguments as to the inclusion of the requirement of strict scrutiny.

 We find that the Summary Statements for 2018-92 through 2018-99, as originally drafted by the Secretary of State, are fair and impartial.[16] We find that the Summary Statements drafted for 2018-101 and 2018-102 lack enough specificity to be sufficient. As such, we have redrafted those Summary Statements to comply with the requirements of section 116.190. Rule 84.14.[17]

### Conclusion

We hold that the circuit court did not err in denying Counts I and II of Plaintiff Evans's Petition. We do, however, find that the circuit court erred in taking into account the effects of SB19 in its review of the Summary Statements and drafting the Amended Summary Statements. We find that the Summary Statements as originally drafted by the Secretary of State for Initiative Petitions 2018-92 through 2018-99 are fair and sufficient. We find that the Summary Statements drafted by the Secretary of State for Initiative Petitions 2018-101 and 2018-102 lacked enough specificity to be sufficient. Pursuant to Rule 84.14, we enter the judgment the circuit court ought to have given, and certify the Summary Statements for 2018-92 through 2018-99 as originally drafted by the Secre-

---

**16.** Plaintiff Evans raises a challenge to the circuit court's holding that "at the time they were drafted, the summary statements for the [Initiative Petitions] may have satisfied the minimal requirements of Chapter 116," arguing that the Summary Statements failed to meet the requirements of Chapter 116 regardless of the passage of SB19. Because we find

that the circuit court improperly redrafted the Summary Statements, we need not address this argument because it would have no practical effect to our holding.

**17.** All rule references are to Missouri Supreme Court Rules (2017).

tary of State. The Summary Statements for 2018-101 and 2018-102, which shall appear on the ballot, if the other legal prerequisites to placing them on the ballot are met, shall read as follows:

Shall the Missouri Constitution be amended to prohibit restricting or impairing an agreement that requires employees to support their chosen collective bargaining representative and apply a strict scrutiny review to any such restrictions or impairments?

The Hill Plaintiffs' Point Relied On I is denied. Plaintiff Evans's Point Relied On III is granted in part and denied in part, consistent with the opinion above. Louis's cross-appeal Point Relied On I is granted in part, and denied in part, consistent with the opinion above. Louis's cross-appeal Points Relied On II and III are denied as moot. The matter is affirmed in part and reversed in part and judgment is given by this Court pursuant to Rule 84.14 as set forth herein.

All concur